## WELLS v. SHRIVER.

No. 10431—Opinion Filed April 5, 1921.

(Syllabus.)

**1. Judgment—Finality.**

Under the Oklahoma Code of Civil Procedure there can be but one judgment in an action.

**2. Same—Definition—Matters Concluded.**

A judgment is the final determination of the rights of the parties in an action. To constitute a judgment under the Code, it must judicially determine all of the issues raised by the pleadings except such as are waived or abandoned on the trial of the case.

**3. Same.**

A judgment must not only determine the rights of the parties in an action, but must conclude all further inquiry into the issues joined by the pleadings and leave nothing further to be done except to carry it into execution.

**4. Motions—"Orders."**

Every direction of a court or judge made or entered in writing and not included in a judgment is an order. Section 5316, Revised Laws of 1910.

**5. Appeal and Error—"Final Order."**

To constitute a final order in an action, it must be an order affecting a substantial right in the action, and the effect of such order is to determine the action and prevent a judgment.

**6. Same—Time for Appeal—Right to Review—Orders Not Final.**

The party aggrieved by any order made by the court or judge thereof in an action before judgment and which is not a final order, may save his exceptions and have such order reviewed by this court when brought up by proper proceedings in error to review the judgment rendered by the trial court, notwithstanding more than six months have elapsed since the making of such order, provided the petition in error is filed in this court within the statutory period of time to give this court jurisdiction to review the judgment.

**7. Frauds, Statute of—Purpose of Statute.**

The statute of frauds was enacted for the purpose of preventing fraud, and not for the purpose of promoting frauds or aiding a person in the perpetration of frauds.

**8. Partnership — Joint Adventures—Rights of Parties—Oil Lease.**

Where a partnership exists between two persons who are undertaking a joint venture to procure an oil and gas lease and develop the same and a third person joins in the venture with them, under an agreement that he is to have a specified interest in the lease and division of the profits, knowing the relationship which exists between the two, he thereby becomes a partner with each of the original partners in the joint venture.

**9. Same—Trust Relation of Partner Holding Property — Accounting—Judgment — Evidence.**

The evidence examined, and held to be sufficient to sustain the judgment of the trial court.

**10. Same.**

The testimony in this case disclosed that a partnership was created by Wells, Shriver, and Bumbaugh for a joint venture in procuring and operating oil and gas leases on two 40-acre tracts of land. In consideration of Wells being let in to the partnership, he agreed to furnish the money and hold the title in trust as a part of his security.

**11. Same—Partner as Trustee Ex Maleficio.**

Where S. and B., as partners, find an oil and gas lease that can be purchased for a stipulated price and bargain with the holder

of such lease for its purchase, then agree to let W. in on the deal in consideration of W. putting up the money to pay for the lease and developing it, W. to carry S. and B. for a one-third interest each, and S. and B. permit the title to be taken in W.'s name, then without compensation or salary B. devotes his entire time and experience to the development of the lease, S. furnishing him money to live o and pay his expenses yhile he is so operating the lease for the benefit of all three, and W., the holder of the legal title, attempts to deny the rights of either of the other parties, and repudiates the confidence reposed in him, this is such a fraud as will operate to convert W. into a trustee ex maleficio.

Error from District Court, Tulsa County; Conn Linn, Judge.

Action by Marcus W. Shriver against N. D. Wells and another to recover a one-third interest in certain oil and gas leases and for an accounting of the profits. Judgment for the plaintiff. Defendant Wells appeals. Affirmed.

William F. Tucker and Hulette F. Aby, for plaintiff in error.

Carroll, Mason & Honnold and C. H. Rosenstein, for defendant in error.

MILLER, J. This action was commenced on October 15, 1913, by Marcus W. Shriver, as plaint.ff, against N. D. Wells and George I. Bumbaugh, as defendants, in the district court of Tulsa county, to recover an undivided one-third interest in certain oil and gas leases, with the wells and equipment thereon, and for an accounting of the profits derived therefrom. Said oil and gas leases were set out in the plaintiff's petition and covered four separate 40-acre tracts of land. The case was tried to the court without a jury, judgment was rendered in favor of the plaintiff, Shriver, and against defendant Wells, as to two of the 40-acre tracts. There was not any adjudication as against defendant Bumbaugh, and it appears that he was not a necessary party, as he did not assert any rights or claims as against the plaintiff, and he is not a party to this appeal. Defendant Wells appears in this court as plaintiff in error and Shriver, plaintiff in the court below, appears here as defendant in error.

At the very outset, we are confronted with the question of jurisdiction of this court, raised by defendant in error, and this question must necessarily have our first consideration.

Defendant in error contends two judgments have been rendered in this case, and then says:

"This court has not jurisdiction to review upon this appeal any errors occurring upon the trial of this case before the district court of Tulsa county, in 1914, for two reasons: First. Because the judgment rendered on May 26, 1914, was a final judgment and no appeal was prosecuted from said judgment to this court within the time provided by statute for perfecting appeals from a judgment of a district court of this state; the present appeal having been filed in this court subsequent to the judgment entered upon the report of the referee, which said judgment was entered on July 20, 1918, more than four years after the original judgment upon the merits of this action. Second. For the reason that no motion for a new trial setting up the errors occurring in the trial had in 1914 was filed until the 20th day of July, 1918, and in order to give this court jurisdiction to review any errors occurring upon the trial of this action had in 1914, it was and is necessary that a motion for a new trial should have been filed in the trial court, calling the attention of the trial court to said errors within three days after the rendition of said judgment and this, regardless of whether or not the judgment entered on May 26, 1914, was, as we contend, a final judgment or whether the same was, as defendant assumes, a mere interlocutory decree."

An examination reveals an apparent irreconcilable conflict of authorities on what constitutes a final judgment.

In view of the innumerable times this question has been before the court, considering its importance, and as this court has not passed directly upon it, we think it should be discussed at length. In doing this, we will set out in full the different orders made by the court and upon which defendant in error relies to sustain his contentions.

"Now on this 3rd day of April, 1914, the same being one of the regular judicial days for the March, 1914, term of this court, the above-entitled cause comes on for trial; the plaintiff being present in person and by his attorney, Herbert D. Mason; the defendant N. D. Wells being present in person and by his attorneys, Aby & Tucker; and the defendant George I. Bumbaugh having made default in pleading and making no defense. The plaintiff and the defendant N. D. Wells announced ready for trial. * * *"

Here the journal entry recites the introduction of evidence, ruling on motions, objections, and other proceedings had at the trial, then sets out the specific findings of fact made by the court, which findings sustain the conclusions reached, which are as follows:

"* * * And thereupon and upon the ——— day of_____, 1914, the court pronounced and rendered its interlocutory judgment and decreed as follows:

"It is ordered, adjudged and decreed that each of the parties is entitled to and has and owns a one-third (⅓) interest each in the said leases and in the profits thereof accrued and to accrue; subject, however, to the right of defendant, Wells, to hold title to the said leases until he shall have been paid his expenditures in full; that the defendant, Wells, had been and is holding said leases as a partner of, and trustee for, the plaintiff and the defendant, Bumbaugh, as to a one-third (⅓) interest each; that the defendant, Wells, be and is hereby enjoined from making any transfer or disposition of said property in violation of his said trust; that he execute, acknowledge and deliver to the plaintiff, upon his demand therefor when and after said expenditures shall have been paid in full, a good and sufficient instrument in writing, setting apart and transferring to him one-third (⅓) interest in the said property and the proceeds therefrom; that an accounting be had before a referee, to be appointed by this court, of all receipts and disbursements had or made in connection with the acquisition and development of the said property; that the defendant, Wells, account to the plaintiff for, and pay over to him when and as the same accrue, a full one-third (⅓) share of the profits derived from the said leases; that further order and final decree of the court await the result of the said accounting, and that the plaintiff have his costs in this suit against the defendant, Wells.—to all of which judgment and decree the defendant, Wells, excepts.

"It is further ordered, adjudged and decreed that the demurrer of the defendant, Wells, to the plaintiff's evidence be overruled, to which said defendant, Wells, excepts; that the plaintiff has and owns no right, title or interest either in law or equity to the oil and gas mining lease executed by Charles Burtner, lessor, to J. A. Gammon and R. W. McIntosh, lessees, and introduced in evidence upon the trial covering the southwest quarter (S.W.¼) of the southeast quarter (S.E.¼) of section thirteen (13), township twenty-four (24) north, range sixteen (16) east, I. B. M., or in and to the deed of mineral rights executed by R. H. Crosby, grantor, to N. D. Wells, which was introduced in evidence upon the trial and covers the northeast quarter (N.E.¼) of the southeast quarter (S.E.¼) of section thirteen (13), township twenty-four (24) north, range sixteen (16) east. I. B. M.,—to all of which the plaintiff excepts.

"(Signed) L. M. Poe, District Judge."

That pursuant to the provision in the journal entry for the appointment of a referee, and on the 5th day of November, 1917, al-most three years and six months after the judgment was rendered, and on the written application of plaintiff, Shriver, the court made its order appointing a referee. Omitting the formal recitals, the order reads as follows:

"It is, therefore, by the court, considered, ordered and decreed that John Blue be, and he hereby is, appointed referee for the purpose of taking an account as aforesaid, and said referee is hereby ordered and directed to take such testimony as necessary, and the court report his findings of fact and conclusions of law herein, within 60 days from this date.

"(Signed) N. E. McNeill, District Judge."

Upon the report of the referee, the court entered the following judgment:

"Now, on this 20th day of July, 1918, the same being one of the regular judicial days of the June, 1918, term of this court, the above-entitled matter coming on for hearing upon the motion of the plaintiff to confirm the report of the referee, which said report was heretofore filed herein on February 2, 1918, and upon the objections to said report filed by the defendant, N. D. Wells, on February 2, 1918, and on February 8, 1918, and upon the bill of exceptions by said defendant, N. D. Wells, filed herein on February 2, 1918, and the plaintiff appearing by his attorney, Herbert D. Mason, Esquire, through C. H. Rosenstein, and the defendant, N. D Wells appearing by his attorneys, Messrs. Aby & Tucker through William F. Tucker, Esquire, and it appearing to the court that judgment was heretofore entered in this cause on the 26th day of May, 1914. ordering and decreeing that each of the parties hereto is entitled to and has and owns a one-third interest in and to the following described property, to wit:

"A certain oil and gas mining lease executed by Charles Sullivan and wife, lessors, to J. A. Gammon, R. W. McIntosh and Charles Sullivan, lessees, dated November 18, 1912, and covering: The northwest quarter (N.W.¼) of the southeast quarter (S.E.¼) of section thirteen (13), township twenty-four (24) north, range sixteen (16) east. I. B. M.; and, one certain oil and gas mining lease executed by Charles Sullivan and Mabel Sullivan, his wife, lessors, to J. A. Gammon and R. W. McIntosh, lessees, dated November 18, 1912, and covering: The southeast quarter (S.E.¼) of the southwest quarter (S.W.¼) of section thirteen (13), township twenty-four (24) north, range sixteen (16) east, I. B. M.; and in the profits thereof accrued and to accure, subject to the right of defendant, Wells, to hold title to said leases until he shall have been paid his expenditure in full, and that the said defendant, Wells, has been and is holding said leases as a partner of, and trustee for the plaintifff and the defendant Bumbaugh, as as to a one-third interest each and that by

said judgment it was futher provided that an accounting be had, before a referee, of all receipts and disbursements had or made in connection with the acquistion or development of said property and that said defendant, Wells, should execute, acknowledge and deliver to the plaintiff upon the plaintiff's demand, therefor, when and after he had been paid his expenditures in full, a good and sufficient instrument in writing, setting apart and transferring to the plaintiff an undivided one-third interest in and to the property and the proceeds therefrom and that the said defendant, Wells, should account to the plaintiff and pay over to him when and as the same accrues a full one-third share of the profits derived from said leases, all as appears from the journal entry heretofore filed herein on January 9, 1915, and it further appearing to the court that said accounting above mentioned has been had before a referee appointed by this court, and that this matter now comes on for hearing upon the report of said referee, the motion to confirm said report filed by the plaintiff and the objections and exceptions thereto filed by the defendant, and the court being fully advised in the premises finds:

"That the said defendant, N. D. Wells, has been paid his expenditures in full herein and that the said plaintiff is entitled to a good and sufficient instrument in writing setting apart and transferring to him his said one-third interest in and to said property.

"That said motion to confirm the report of the referee should be sustained and that the objections and exceptions of the defendant, N. D. Wells, filed thereto should be denied and overruled and that the plaintiff should have judgment for the sum of thirteen hundred thirty-three and 99/100 dollars ($1,333.99), together with interest thereon at the rate of six per cent. per annum from the 30th day of January, 1918.

"It is, therefore, by the court considered, ordered, adjudged and decreed that the said defendant, N. D. Wells, make, execute, acknowledge and deliver to the plaintiff within ten (10) days of this date a good and sufficient instrument of conveyance in writing, setting apart, transferring and conveying to the said plaintiff his said undivided one-third interest in and to the property hereinbefore described and the proceeds therefrom and that the motion of the plaintiff to confirm the report of the referee, heretofore filed herein on February 2, 1918, be and the same, hereby is sustained and the objections and exceptions of the defendant, N. D. Wells, to said report of the referee be and the same hereby are denied and overruled, to all of which the defendant, N. D. Wells, excepts.

"It is further considered, ordered and decreed that said plaintiff have and recover judgment upon the report of said referee of and from said defendant, N. D. Wells, in the sum of thirteen hundred thirty-three and 99/100 dollars ($1,333.99), together with interest thereon at the rate of six per cent. per annum from the 30th day of January, 1918, and that the plaintiff have judgment for his costs in this action and that the costs of said referee be taxed to the defendant, N. D. Wells, to all of which judgment and decree of the court the defendant, Wells, excepts, and in open court given notice of his intention to appeal to the Supreme Court of the state of Oklahoma.

"It is further considered, ordered, adjudged and decreed that the motion for a new trial this day filed by the defendant, N. D. Wells, herein be and the same hereby is overruled and denied, to which action of the court the defendant, N. D. Wells, at the time duly excepted, which exception was by the court allowed, and thereupon the defendant, N. D. Wells, in open court gave notice of his intention to appeal to the Supreme Court of the state of Oklahoma, and for good cause shown it is by the court further considered, ordered, adjudged and decreed that the said defendant, N. D. Wells, be and he hereby is granted an extension of time of 90 days from and after this date within which to make and serve the case-made herein and that the plaintiff have ten days thereafter within which to suggest amendments thereto and that the same be settled upon five (5) days' notice thereafter by either party hereto.

"And it is by the court further considered, ordered, adjudged and decreed that the said defendant, N. D. Wells, be and he hereby is granted 45 days from this date within which to file a supersedeas bond herein; said bond to be in the sum of $2,000.00 and the judgment herein to be superseded for said period of 45 days pending the filing of said bond and upon the filing thereof the same to be superseded pending appeal herein in the manner provided by law.

"(Signed) Conn Linn, Judge."

Chapter 18, Sess. Laws 1910-11, found at page 35, provides as follows:

"All proceedings for reversing, vacating or modifying judgments or final orders shall be commenced within six months from the rendition of the judgment or final order complained of. * * *"

Pitchford, J., in the case of Star Mill & Elevator Co. v. Bruce, 77 Okla. 113, 186 Pac. 940, construing the above statute, states:

"Where more than six months has intervened between the rendition of a final order or judgment sought to be reviewed and the filing of the petition in error in the Supreme Court, this court has no jurisdiction to review such final order or judgment."

Rainey, C. J., in the case of Perry v. Werline, 77 Okla. 92, 186 Pac. 940, construes the same statute as follows:

"Under chapter 18, Sess. Laws 1910-11, proceedings in error in the Supreme Court must be brought within six months from the date of the rendition of the judgment or order from which the appeal is sought to be taken; and, when not so brought, this court is without jurisdiction to review such final order."

Hardy, J., in the case of Drake v. Ruble, 71 Oklahoma, 176 Pac. 920, says:

"Proceedings in error in this court must be filed within six months after the rendition of the final order sought to be reviewed, and, if not so filed, this court is without jurisdiction to entertain the appeal."

The following cases are to the same effect: Newby v. Walters, 67 Oklahoma, 169 Pac. 1070; Williams v. Thompson, 68 Oklahoma, 174 Pac. 268; Davis v. Revelle, 75 Okla. 8, 180 Pac. 958; Phillips v. Dillingham, 44 Okla. 102, 144 Pac. 363; Dill v. Flesher, 53 Okla. 359, 156 Pac. 1191; Wedd v. Gates, 15 Okla. 602, 82 Pac. 808; State Savings Bank of Manchester, Ia., v. Bedden et al., 38 Okla. 444, 134 Pac. 20; Brown, Administrator, et al. v. Parks et al., 80 Okla. 184, 195 Pac. 133.

The appellate jurisdiction of the Supreme Court of the state of Oklahoma granted by section 2, art. 7, of the Constitution has been, by authority of the Constitution, defined and prescribed by the act of the Legislature as set out in Revised Laws of Oklahoma, 1910, section 5236:

"The Supreme Court may reverse, vacate or modify judgments of the county, superior or district court, for errors appearing on the record, and in the reversal of such judgment or order, may reverse, vacate or modify any intermediate order involving the merits of the action, or any portion thereof. The Supreme Court may also reverse, vacate or modify any of the following orders of the county, superior or district court, or a judge thereof: First. A final order. Second. An order that grants or refuses a continuance; discharges, vacates or modifies a provisional remedy; or grants, refuses, vacates or modifies an injunction; that grants or refuses a new trial; or confirms or refuses to confirm, the report of a referee; or sustains or over-rules a demurrer. Third. An order that involves the merits of an action or some part thereof."

The phrase "final judgment" has been used by defendant, while the statute above quoted says, "The Supreme Court may reverse, vacate or modify **judgments of**." The statute does not say **final** judgments, but it **does** use the word **final** order. Section 5123,

Revised Laws of 1910, defines a judgment as follows:

"A judgment is the final determination of the rights of the parties in an action."

In Board of Com'rs of Custer County v. Moon, 8 Okla. 205, 57 Pac. 161, Hainer, J., defined a judgment:

"A judgment is a fixed and ultimate determination of the rights of the parties in an action."

"As the cause was pending on March 10, 1917, the orders entered by the district court of Oklahoma county in this matter were interlocutory orders and not subject to review by an appeal therefrom until a final determination of the main action. No one of the orders made by the district court of Oklahoma county determines any question that affects the substantial rights of any one of the defendants herein. Neither is any one of the orders a final judgment. A 'final judgment' has been determined to be one ending a particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to determine the rights of the parties. If such orders as were entered in this case were appealable to this court for review before final judgment, there would never be any end of litigation. It would furnish a method and means by which litigation could be carried on ad infinitum. Public policy requires that there should be an end to litigation at some time, and for that reason our statute has wisely provided a salutary rule which does not permit an appeal to this court from an interlocutory order or ruling made by the trial court during the trial of a cause unless specially authorized. All the rulings complained of in this matter could have been excepted to, and, when a final disposition was made of said cause, and a final order, judgment, and decree entered therein, determining the respective rights of the parties to this controversy have been reviewed by incorporating the same in an appeal by petition in error to this court. McMaster v. Bank et al., 13 Okla. 326, 73 Pac. 946; McCulloch v. Dodge, 8 Kan. 476; Flint v. Noyes, 27 Kan. 351; Short v. Nooner, 16 Kan. 220. We are therefore of the opinion that the appeal is without merit and should be dismissed, and therefore recommend that the same be done." Oklahoma City Land & Development Co. v. Patterson, 73 Oklahoma, 175 Pac. 934.

"A cause is finally disposed of when final judgment is rendered, and the collection of the judgment is no part of the duty of the court." Needles v. Frost, 2 Okla. 19, 35 Pac. 574.

"The dismissal of an action is, in contemplation of the Civil Code, a judgment. * * * And when the dismissal is 'at the cost of plaintiff,' as in this case, it is a final determination with reference to the costs, as well as to the action itself, and is, in effect, an

order and judgment that the plaintiff shall pay the costs." Dixon v. Peacock, 43 Okla. 87, 141 Pac. 4.9; Houston v. Clark, 36 Kan. 412. 13 Pac. 739; Rogers v. Gosnell, 51 Mo. 466; Huntington v. Blakeney, 1 Wash. T. 111; Lind v. Adams, 10 Iowa, 398, 77 Am. Dec. 123.

"A judgment is the final determination of the rights of the parties in an action." Davis v. Norton, 36 Okla. 505, 129 Pac. 750.

In the case of Annis v. Bell, 10 Okla. 647, 64 P. c. 11, this court has quoted from different authorities defining a judgment:

"A judgment, it seems to us, must mean the ultimate conclusion of the court, or the final decision of the issues joined between the parties. The Supreme Court of the state of Illinois, in a case reported in the 47 Ill. at page 167. have said: 'A final decision is one from which no appeal or writ of error can be taken.' Blackstone defines a final judgment: 'In practice a judgment which puts an end to an action at law by declaring that the plaintiff either has or has not entitled himself to recover the remedy he sues for.' (3rd Blackstone's Commentaries, 398): 'A judgment which cannot be appealed from, which is perfectly conclusive upon the matter adjudicated.' (24 Pick. 300): Mr. Black in his Law Dictionary defines a final judgment, 'as one which puts an end to the action, or disposes of the whole case, finally and completely by declaring, either that the plaintiff is entitled to recover a specific sum or that he cannot recover, and leaving nothing to be done but the execution of the judgment.' (Black's Law Dictionary, page 654.) The Code of the state of New York declares: 'A judgment is the final determination of the rights of the parties in the action.' (N. Y. Code. sec. 245: Code of Civil Procedure, Cal., sec. 577: Code of Civil Procedure. Dakota. sec. 228.) The Supreme Court of Nebraska has said: 'No judgment or order which does not determine the rights of the parties in the case, and preclude further inquiry, as to their rights in the premises, is a final judgment.' (7 Nebraska, 398.) Under the law of these decisions it will be seen that what was done in the probate court of Payne county in the bastardy proceedings before it, was not a final decision, or a final judgment between the parties, and if not, then Ida. L. Dillman, in whose favor the execution was issued, was not a creditor of H. O. Bell, within the meaning of the law. * * * "

In Fooshee & Brunson v. Smith, 34 Okla. 247, 124 Pac. 1070. the court had before it a judgment rendered by a justice of the peace. We will bring the two parts of that judgment together in the order in which it should appear and then show the conclusions of the court:

"Now on this the 2d day of April, 1910, this cause coming on for trial and the parties,

plaintiff and defendant, being present in person and being represented by counsel, and the party defendant being present in person and being represented by counsel, and both parties announcing ready for trial, and both parties waiving a jury, and the court having heard all of the evidence, and the argument of attorneys on both sides, took the whole case under advisement."

"Now on this 5th day of April, 1910, the court having considered the whole case of Fooshee & Brunson v. E. S. Smith, and being fully advised in the premises, is of the opinion that the case should be dismissed as to the defendant. But as he signed the note upon which suit is brought and failed to take the same up at the time of settlement, then he should pay the cost of this suit. It is therefore adjudged. ordered. and decreed by the court that this suit be and the same dismissed against the defendant at his cost, this is my judgment until further action is taken upon the case."

In the foregoing case, Sharp, C., speaking for the court, said:

"Various definitions of a final judgment may be found in Ann's v. Bell, 10 Okla. 647, 64 Pac. 11. Regardless of the attempt to reserve jurisdiction at the conclusion of the judgment, it appears from the proceedings had that the judgment was in fact a final one. It is obvious from the record of the judgment that the trial involved a consideration of the merits of the controversy. The issues had been joined on plaintiff's bill of particulars on a written answer containing seven paragraphs and it is recited in the judgment: * * * Regardless of the form of the judgment. the case having been considered and decided on its merits, and the rights of the respective parties to the controversy being concluded, the judgment was therefore a final one within the meaning of the statute authorizing appeals from justices of the peace. Collins v. Wagoner, 20 Wis. 52; Stoppenbach v. Zohrlaut et al., 21 Wis. 390; Parsell v. Smyers, 7 Ark. 55; Brenner v. Bigelow, 8 Kan. 496. The case of Board of Commissioners v. Moon, 8 Okla. 205, 57 Pac. 161, cited by counsel for defendant in error, is not in point; the judgment there being held a nullity by reason of the fact that the amount of recovery was left blank. It is urged that the concluding part of the judgment, "this is my judgment until futher action is taken upon this case," is evidence of the fact that the justice of the peace did not intend the judgment to be a final one. The judgment dismissed plaintiff's action, but for some reason taxed the costs to the defendant. It therefore disposed of the entire controversy between the parties, and this view is fully sustained by the subsequent action of the justice of the peace in receiving, examining, filing, and approving the undertaking on appeal on the 13th day of April, and on the day following, certifying to a trans-

cript of the proceedings, and by the further fact that on the 7th day hereafter all papers were filed in the office of the county court."

In Reedy v. Gift, 2 Kan. 387, Crozier, C. J., said:

"Was the judgment of Justice Manning such a one as could be appealed from? The plaintiff had filed a very full bill of particulars. The defendant's motion set up many things which did not appear upon the face of the papers, any one of which, if sufficient for a dismissal, was sufficient as a plea in bar, and could not properly be tried without proof, and if sustained by proof, would be a complete bar to another suit for the same cause of action. We are bound to presume that the magistrate had sufficient proof to warrant that judgment be rendered. Such being the case, it must necessarily have been a trial upon the merits, no matter what it may have been called. It may have been regarded as a motion to dismiss, but it was in fact and effect a trial of the cause of action, and the judgment, although upon its face a judgment of dismissal, is a judgment upon the merits. It finally disposes of the cause of action set out in the bill of particulars, and would be a complete answer to another suit upon that cause of action. * * * The judgment that was rendered seems to have been regarded as a final disposition of the case. When the petition was filed there was, if its allegations be true, a subsisting right of action on the bond of which the district court had original jurisdiction. In legal effect an original suit had been brought upon that bond; the defendants were in court by the service of a summons, and had answered, setting up new matter to which there was a reply. Was the order of dismissal intended to take this case with it? Undoubtedly so, as all parties seem to have regarded the dismissal, not as a dismissal of the appeal alone, but of the whole case. * * *"

"A final judgment is one which finally decides and disposes of the whole merits of the case, and reserves no further question, or direction, for the future or further action of the court. The voluntary dismissal by the plaintiff, of the suit in which the injunction is issued, is a final determination of that suit, and determines the right to sue on the undertaking given on the issuing of a temporary injunction as effectually as a final judgment on a trial." Brown v. The Galena Mining and Smelting Co., 32 Kan. 528, 4 Pac. 1013; Kermeyer v. Kansas Pac. R. Co., 18 Kan. 215.

"A final judgment from which an appeal will lie, under Const., art. 8, para. 9, is that adjudication which finally disposes of the subject-matter of the litigation on the merits of the case." Popp v. Daisy Gold Min. Co. (Utah) 63 Pac. 185.

"A final judgment is one which disposes of the controversy, either by dismissing the cause. before hearing is had upon the merits, or after trial, by rendering judgment in favor of one or the other of the parties to the action." State ex rel. v. Superior Court (Wash.) 131 Pac. 1136.

"An order of reference is not a final order within section 524, Civil Code, nor does it determine the action or prevent a judgment, nor is it an order made in a special proceeding; and though it may affect a substantial right, it is not an order involving the merits of the action within the meaning of para. 4 of the Code, as amended by L. 1865, p. 130, and cannot, therefore, be reviewed by the Supreme Court, especially not until after final judgment. An order of reference is intended for the finding of the issues of the case, and a submission of such findings to the court, subject, however, to exception and review; and the report stands as the verdict of a jury, in case the reference is of the issues of fact alone, or as the decision of the court, where the reference is of all the issues, and on the report final judgment may be entered if no good ground of objection appears. The conduct of the trial is not changed by a reference." Savage v. Challiss, 4 Kan. 319.

One of the leading cases on final judgment is McGourkey v. T. & O. C. R. Co., 146 U. S. 536, 36 L. Ed. 1079, in which case the authorities are systematically and logically reviewed:

"(1) We are confronted upon the threshold of the case with the proposition that the decree of June 9, 1885, ordering this property to be turned over by the receiver to the petitioner, was a final decree, which it was not in the power of the court at a subsequent term to disturb, and hence that the court was estopped to render the decree of February 4, 1889, from which this appeal was taken, at least in so far as it assumed to upset the title of McGourkey. Probably no question of equity practice has been the subject of more frequent discussion in this court than the finality of decrees. It has usually arisen upon appeals taken from decrees claimed to be interlocutory, but it has occasionally happened that the power of the court to set aside such a decree at a subsequent term has been the subject of dispute. The cases, it must be conceded, are not altogether harmonious. Upon the one hand it is clear that a decree is final, though the case be referred to a master to execute the decree by a sale of property or otherwise. as in the case of the foreclosure of a mortgage. Ray v. Law, 7 U. S. 3 Cranch, 179 (2:404); Whiting v. Bank of U. S., 38 U. S. 13 Pet. 6 (10:33); Bronson v. La Crosse & M. R. Co., 67 U. S. 2 Black. 528 (17:359). If, however, the decree of foreclosure and sale leaves the amount due upon the debt to be determined, and the property to be sold ascertained and defined. it is not final. North

Carolina R. Co. v. Swosey. 90 U. S. 23 Wall. 405 (23: 136); Grant v. Phoenix Insurance Co., 106 U. S. 429 (27:237). A like result follows if it merely determines the validity of the mortgage, and, without ordering a sale, directs the case to stand continued for further decree upon the coming in of the master's report. Burlington, C. R. & N. R. Co. v. Simmons, 123 U. S. 52 (31:73); Parsons v. Robinson, 122 U. S. 112 (30:1122). It is equally well settled that a decree in admiralty determining the question of liability for a collision or other tort (The Palmyra, 23 U. S. 10 Wheat. 502 [6:375]; Chace v. Vasquez, 24 U. S. 11 Wheat. 429 [6:511]; Mordecai v. Lindsay, 60 U. S. 19 How. 199 [15:624]). or in equity establishing the validity of a patent and referring the case to a master to compute and report the damages, is interlocutory merely. Barnard v. Gibson, 48 U. S. 7 How. 650 (12:857); Humiston v. Stainthorp, 69 U. S. 2 Wall. 106 (17:905). It may be said in general that if the court make a decree fixing the rights and liabilities of the parties, and thereupon refer the case to a master for a ministerial purpose only, and no further proceedings in court are contemplated, the decree is final: but if it refer the case to him as a subordinate court and for a judicial purpose, as to state an account between the parties, upon which a further decree is to be entered, the decree is not final. Craighead v. Wilson, 59 U. S. 18 How. 199 (15:332); Beebe v. Russell, 60 U. S. 19 How. 283 (15:668). But even if an account be ordered taken, if such accounting be not asked for in the bill, and be ordered simply in execution of the decree, and such decree be final as to all matters within the pleadings, it will still be regarded as final. Craighead v. Wilson, supra; Winthrop Iron Co. v. Meeker, 109 U. S. 180 (27:898). In the case under consideration the petitioner prayed for four distinct reliefs: 1. That the receiver perform all the covenants of the lease, and pay all sums due, etc. 2. Or that he be directed to deliver to petitioner the rolling stock in order that the same might be sold. 3. That he be directed to file a statement of the number of miles run, and of the sums received for the use of such rolling stock. 4. That it be referred to an examiner to take testimony and report the value of the use of such rolling stock while in custody of the receiver, and that the receiver be directed to pay the amount justly due, etc. The decree followed the general terms of the petition by ordering the rolling stock claimed to be delivered to McGourkey, and referring the case to a special master to determine the rental of the same while used by the receiver; the value of the rolling stock over and above the sums paid by the receiver to the petitioner while the same was in the custody of the receiver; the number of miles run by the receiver; the money received for the use of the same by other roads; the loss, damage, and destruction to the same while in the custody of the receiver; and also to

'determine and report upon all questions and matters of difference between said receiver and said McGourkey, growing out of the use and restoration of said cars and locomotives.' It is claimed that inasmuch as the court granted the prayer of the petitioner, and turned the property over to him, it was a final adjudication of his right to the same, notwithstanding the reference to a master for an accounting; and we are referred to certain cases in this court as sustaining this contention. In Forgay v. Conrad, 47 U. S. 6 How. 201 (12:404), the object of the bill was to set aside sundry deeds for lands and slaves, and for an account of the rents and profits of the property so conveyed. The court entered a decree declaring the deeds fraudulent and void, directing the property to be delivered up to the complainant, directing one of the defendants to pay him $11,000, and 'that the complainant do have execution for the several matters aforesaid.' The decree then directed that the master take an account of the profits. Under the peculiar circumstances of the case the decree was held to be appealable, although, said Chief Justice Taney, 'undoubtedly it is not final in the strict technical sense of that term.' The opinion was placed largely upon the ground that the decree not only decided the title to the property in dispute, but awarded execution. In the very next case, Perkins v. Fourniquet, 47 U. S. 6 How. 206 (12:406), where the circuit court decreed that complainants were entitled to two-sevenths of certain property, and referred the matter to a master to take an account of it, the decree was held not to be final. And again in the next case, Pulliam v. Christian, 47 U. S. 6 How. 209 (12:409), a decree setting aside a deed by a bankrupt, directing the trustees under the deed to deliver up to the assignee all the property in their hands, and directing an account to be taken of the proceeds of sales previously made, was also held not to be a final decree. Indeed, the case of Forgay v. Conrad has been generally treated as an exceptional one, and, as was said in Craighead v. Wilson, 59 U. S. 18 How. 199, 202 (15:332, 333), as made under the peculiar circumstances of that case, and to prevent a loss of the property, which would have been disposed of beyond the reach of an appellate court before a final decree adjusting the accounts could be entered. A somewhat similar criticism was made of this case in Beebe v. Russell, 60 U. S. 19 How. 283, 287 (15:668, 669), wherein it was intimated that the fact that execution had been awarded was the only ground upon which the finality of the decree could be supported. In Thompson v. Dean, 74 U. S. 7 Wall. 342 (19:94), the decree directed the defendant to transfer to the plaintiff certain shares of stock, and that an account be taken as to the amount paid and to be paid for the same, and as to dividends accrued. But this was held to be a final decree upon the ground that it changed the property in the stock as abso-

lutely and as completely as could be done by execution on a decree for sale. In this case the court did distinctly approve of Forgay v. Conrad, although the decree was put upon the ground that it decided finally the right to the property in contest. In Winthrop Iron Co. v. Meeker, 109 U. S. 180 (27:898), a bill was filed to set aside as fraudulent the proceedings of a stockholders' meeting, and to have a receiver appointed. The decree adjudged that the proceedings of the meeting were fraudulent; that a certain lease executed in accordance with the authority then given was vo.d; that a receiver should be appointed with power to continue the business; and that an account be taken of profits realized from the use of the leased property, and also of royalties upon certain ores mined by the defendants. The court held the decree to be final, because the whole purpose of the suit had been accomplished, and the accounting ordered was only in aid of the execution of the decree, and was not a part of the relief prayed for in the bill, which contemplated nothing more than a rescission of the authority to execute the lease, and a transfer of the management of the company to a receiver. The language of Mr. Justice McLean in Craighead v. Wilson, 59 U. S. 18 How. 201 (15:33), was quoted to the effect that the decree was final on 'all matters within the pleadings,' and nothing remained to be done but to adjust accounts between the parties growing out of the operations of the defendants during the pendency of the suit. The case was distinguished from suits by patentees in the fact that, in such suits, the money recovery is part of the subject-matter of the suit. In this particular, too, the case is clearly distinguishable from the one now under consideration, inasmuch as here the account which the special master was directed to take was within the issue made by the pleadings and a part of the relief prayed for in the petition, the absence of which was held by the court in the Winthrop iron case to establish the finality of the decree. In Central Trust Co. v. Grant Locomotive Works, 135 U. S. 207 (34:97), certain decrees were set aside at a subsequent term of the court of its own motion. The decrees 'determined the ownership of the locomotives and the right to their possession: that they were essential to the operation of the roads by the receiver and should be purchased by him; that certain designated amounts should be paid for the rentals and the purchase price, which amounts were made a charge uopn the earnings, * * * and that the amounts should be paid by the receiver.' Apparently there was no reference at all to a master for an accounting, and the decrees were held to be final. Obviously the case is not decisive here. Upon the other hand, in Beebe v. Russell, 60 U. S. 19 How. 283 (15:668), the court decreed that the defendants should execute certain conveyances, and surrender possession, and then referred it to a master, to take an account of the rents and profits received by the defendants, with directions as to how the account should be taken. This decree was held not to be final, Mr. Justice Wayne remarking that it m.ght be so 'if all the consequential directions depending upon the result of the master's report are contained in the decree so that no further decree of the court will be necessary, upon the confirmation of the report, to give the parties the entire and full benefit of the previous decision of the court'; and that the decree is final when ministerial duties only are to be performed to ascertain the sum due. Practically the same ruling was made in the next case of Farrelly v. Woodfolk, 60 U. S. 19 How. 288 (15:670). In the case of the Keystone M. & I. Co. v. Martin, 132 U. S. 91 (33:275), the bill was in the nature of an action of trespass for removing minerals from the plaintiff's land, and prayed for an injunction restraining the defendant from the commission of further trespasses, and for an account of the quantity and value of the ore taken. The court made a decree perpetually enjoining the defendant from entering upon or removing minerals from the land, and further ordering an account, etc. This was held to be not a final decree from which an appeal could be taken to this court, because it did not dispose of the entire controversy between the parties. This case is directly in point, and was referred to with approval in Lodge v. Twell, 135 U. S. 232 (34:153). There are none of these cases which go to the extent of holding a decree of this kind final. While it directed the surrender of the rolling stock in question to the petitioner, it did not purport to pass upon his title to the same, and referred the case to a master, in accordance with the prayer of the bill, to take an account not only of rents and profits and of damage to the rolling stock, but of 'all questions and matters of difference' between the receiver and the petitioner 'growing out of the use and restoration of the same.' This decree could not be said to be a complete decision of the matters in controversy, or to leave ministerial duties only to be performed, or to direct an accounting merely as an incident to the relief prayed for in the bill. But if the finality of this decree were only a question of doubt we think that in view of the manner in which it was treated by the court below, that doubt should be resolved in favor of the defendant. The decree was pronounced on June 9, 1885; on August 14, 1886, the Toledo & Ohio Central Railway Company, under leave of the court, and without objection, filed an answer. averring the ownership of the rolling stock to have been in the Ohio Central Railroad Company, and setting forth in' detail the manner in which it had been purchased and paid for, and, without praying in terms that the former decree be set aside, asked that the leases be rescinded and declared to be null and void; that the money and evidences of indebtedness re-

ceived by the petitioner be refunded; that the ownership of the cars be decreed to be in the defendant as purchaser under the foreclosure sale; and that it be put in possession thereof. A similar answer, adopting the allegations of the other, was filed by the Central Trust Company on October 1, 1886. If the former decree were final, these answers were impertinent, and should have been stricken from the files. The special master to whom the case was referred stated in his report that the first contention related to the title to the property; that the order of reference to him treated it as the property of the trustee McGourkey; and that, in his opinion, the testimony failed to sustain the claims of the purchaser. Testimony upon the question of title was taken by both parties to the proceeding. In the opinion of the court, too, which was filed September 3, 1888, it is stated to have been 'conceded by counsel for petitioner McGourkey (and, as this court thinks, properly so) that complainant and the Toledo & Ohio Central Railway Company are not estopped by anything that has occurred during the progress of the foreclosure suit from setting up the claims they insist upon in respect to said equipment.' In short, it was only in this court that the finality of this decree was claimed. The decree entered in pursuance of this opinion did not even assume to vacate the former decree, but treated the title to the property as distinct from the right of possession; found the issue joined in favor of the trust company and the railway company; overruled the exceptions of petitioner; set aside the report of the special master; disallowed McGourkey's claim; and dismissed his petitions. We lay no stress upon the fact that the Toledo & Ohio Central Railway Company was not made a party to the proceedings under the McGourkey petitions, since, having purchased the property while those proceedings were pending, at the foreclosure sale, it was affected with notice of the litigation."

Other states which have adopted this rule are: Florida.—Griffin v. Orman, 9 Fla. 22; Owens v. Love, 9 Fla. 325.

Kentucky.—Tuggle v. Gilbert, 1 Duv. (Ky.) 340.

Mississippi.—See Cook v. Bay, 4 How. (Miss.) 485.

New York.—Swarthout v. Curtis, 4 N. Y. 415; Chittenden v. Missionary Soc. (Ct. App.) 8 How. Pr. (N Y.) 327; Kane v. Whittick, 8 Wend. (N. Y.) 219; Johnson v. Everett, 9 Paige (N. Y.) 636; Travis v. Waters, 12 Johns. (N. Y.) 500; Crugar v. Douglass, 2 N. Y. 571; Tompkins v. Hyatt, 19 N. Y. 534; King v. Barnes, 107 N. Y. 645, 13 N. E. 799; McKeown v. Officer, 127 N. Y. 687, 28 N. E. 401; Belmont v. Ponvert, 3 Robt. (N. Y.) 693. See, also, Walker v. Spencer, 86 N. Y. 162; Raynor v. Raynor, 94 N. Y. 248. But

see Mills v. Hoag, 7 Paige (N.Y.) 18; Quackenbush v. Leonard, 10 Paige (N. Y.) 131; Produce Bank v. Morton, 42 N. Y. Super. Ct. 472.

Ohio.—Kelley v. Stanbery, 13 Ohio, 408.

South Carolina.—Price v. Nesbit, 1 Hill's Eq. (S. Car.) 445.

Tennessee.—Berryhill v. M'Kee, 3 Yerg. (Tenn.) 157. Compare Meek v. Mathis, 1 Heisk. (Tenn.) 534, holding that such a decree is final in the sense that it cannot be disturbed by the chancellor after the term at which it was rendered, but not final for the purpose of appeal. But see Barton v. Turley, 11 Lea (Tenn.) 600, explaining Meek v. Mathis, 1 Heisk. (Tenn.) 534.

Virginia.—Templeman v. Steptoe, 1 Munf. (Va.) 339. Compare Penn v. Chesapeake, etc., R. Co. (Va. 1895) 23 S. E. 3.

The case of Kelley v. Stanbery, 13 Ohio, 408, is worthy of our consideration, as it draws some fine lines of distinction, and we quote from the opinion of Read, J.:

"This is a bill filed to redeem a mortgage, for specific execution of a contract, to declare a trust, and for an account of rents and profits, in reference to the same premises. Decree was rendered for complainants, in all aspects of the bill, at the term of the Supreme Court in Licking county, 1842, and was referred to a master to take an account of rents and profits, valuable lasting improvements, and the amount due on the mortgage. At the term of the Supreme Court, 1843, the cause was continued on exceptions to master's report, and referred to a master to take an account of rents and profits of the last year. The cause coming up at the term of the Supreme Court, 1844, on master's report, motion was made by William Stanbery, one of the defendants, to open up the decree of 1842, and look to the original equities; upon which motion the case was reserved to court in bank. This presents a preliminary question of practice, as to whether the court at this late period will entertain a motion to open up the decree of 1842. Counsel for complainants regard the decree of 1842, settling the equities of the cause, as final, only to be set aside upon petition for rehearing, or upon review for errors of law, or newly discovered matter since former decree. The question depends wholly upon the fact whether the decree of 1842 was final, or interlocutory; and if final, whether it was still under the control of the court for modification correction, or to be set aside, as equity and good conscience might require. The distinction between final and interlocutory decrees is oftentimes exceedingly nice, yet of most important consideration in practice as the kind of proceeding to be had after a decree depends upon its character. When to take appeals, the time limited for petitions for rehearing, or bills of review, or whether to question the decree on

motion, or by original proceeding, are all involved. A want of observing at all times the distinction between final and interlocutory decrees, has induced some doubt and uncertainty in practice. A decree is final which disposes of the whole merits of the cause, and leaves nothing for further consideration of the court. A decree is interlocutory which finds the general equities, and the cause is retained for reference, feigned issue, or consideration, to ascertain some matter of fact or law, when, again, it comes under the consideration of the court for final disposition. When no further action of the court is required, it is final; when the cause is retained for further action, it is interlocutory. Further decrees and orders of the court sometimes become necessary to carry into effect the rights of parties fixed by final decree; and final decrees oftentimes direct an act to be done, as in case of specific performance, that on payment of the purchase money as specified in the final decree, the vendor shall execute a deed. or, in case of redemption, that on payment of the money due, the mortgage be canceled, and even sometimes all the rights of the parties being found, and all the consequences to flow from a certain fact having been finally determined, a reference as to such fact may be had to a master, and still the decree be final. The confusion has sprung up from failing to observe the distinction between facts and things to be ascertained preparatory to final decree, and facts and things to be ascertained in execution of final decree. Because a final decree might direct that certain facts should be ascertained in execution of such decree, it will not make it interlocutory; nor, on the other hand. because a decree finds the general equities of the cause. and reference is had to a master to ascertain facts preparatory to final disposition, will it be regarded as final. It seldom happens that a first decree can be final to conclude the cause, and yet, in all cases, the general equity should be found, and the principles laid down for the government of the master, before reference had. But such decrees are never held to be final. Indeed, it is remarked by Judge Spencer, in Jaques v. Methodist Episcopal Church, 17 Johns. 548, that no case can be found in which a decree directing a reference to a master, or a feigned issue, for the purpose of ascertaining a material fact, has been held final. But under the practice of our courts, a decree finding the general equities of the case for the purpose of reference. etc., has been held final to support an appeal, but for no other purpose. In case of a final decree, an appeal of course brings up the whole merits of the cause. Proceeding upon the principle that a party may question the finding of the general equity. he can appeal from a decree which may possibly dispose of the case without the expense of reference or further proceeding, or may await the final action of the court. and then appeal if it be desired. In all cases where the decree is in-

terlocutory the whole merits of the cause are before the court for consideration, and it is their duty to render such final decree as equity and good conscience, from a view of the whole case, may require. Even final decrees, whilst they rest in paper, or before enrollment, are within the control of the court for modification, alteration, or to be set aside. And in our state, final decrees are always under the control of the court during the term at which they were rendered, the term being but one day for the purposes of justice. The decree of 1842 was not final, and the whole cause is before the court, and we must therefore look into the original merits and equities of the controversy."

We think the case of Tompkins v. Hyatt, 19 N. Y. 534, above cited, is a case squarely in point with the case at bar and deserves especial consideration:

"The respondent moves to dismiss the appeal, on the ground that the judgment is not final. The action was brought to enforce certain alleged liens upon real estate owned by the defendants. The judgment of the special term, which was affirmed at the general term, directed the sale of the premises, and, as to one of the liens for $2,633.06 and interest, the sheriff who should make the sale was to pay the amount to the plaintiff out of the proceeds. He was also directed to pay the plaintiff the further sum of $1,500 out of said proceeds, after deducting thereout the amount which should be found due for rent and for the use and occupation of the premises, which had for several years been in the possession of the plaintiff and of a party under whom he claimed; and a reference was ordered to a person named to ascertain the amount of such rent and of the use and occupation, and several special directions were given as to charges and allowances to be made upon the taking of the account. The report was directed to be filed with the clerk of Westchester county. Before any proceedings had been had on the reference, the defendants brought the appeal. The land had in the meantime been sold by the sheriff, one of the appellants being the purchaser for $5,000; but no part of the proceeds had been paid over to the plaintiff. None of the cases upon the question whether the judgment appealed from was final so as to be subject to review here, are precisely in point. In Harris v. Clark (4 How. 78) and Cruger v. Douglass (Id. 215) further directions were reserved until the coming in and confirmation of the report upon the reference. It is plain that those judgments were not final, and it was so held. In Swarthout v. Curtis (4 Comst. 415), which was a suit to foreclose a mortgage, there was a judgment for a foreclosure and a reference to compute the amount due, and it was ordered that upon the coming in and confirmation of the report, the premises should be sold and the purchaser let into the possession, and the complainants were to have ex-

ecution for the deficiency, and no question was reserved. This court considered that the judgment was not final under the present practice, but they denied the motion to dismiss the appeal, on its being shown that the reference had been executed and the report confirmed by the special term before the notice of appeal was served. The reasoning of the opinion by the then Chief Judge (Bronson) seems to be decisive of the present motion. It was said to be the policy of the Code to allow only one appeal to this court in the same cause. Here it is obvious that there may be further litigation as to the amount of the allowance for the use and occupation of the premises. Until that amount is finally ascertained, it will not be completely adjudged to whom the entire proceeds of the premises, the subject of the controversy, belong. To determine that question was one of the objects of the suit, and while it remains in part undecided, the judgment cannot be said to be final. (Hollister Bank of Buffalo v. Vail, 15 N. Y.; 593). It is suggested by the appellants' counsel that if the appeal is not sustained, the judgment of the Supreme Court may be completely executed before an opportunity will be afforded to perfect another appeal, as the sheriff will be authorized to pay over the whole proceeds of the premises on the filing of the report, before any opportunity is afforded to contest it or to review the judgment. This, we think, is a matter for the Supreme Court to regulate. That court could, no doubt by order, suspend the payment of the money until an opportunity to appeal should be afforded after the final confirmation of the report. The motion to dismiss the appeal must be granted."

In Swarthout v. Curtis, 4 Comst. (N. Y.) 415, the court defined the policy of the Code. The New York Code on this question is identical with ours. The opinion was written by Bronson, Ch. J.:

"Under the former practice of the court of chancery a decree was regarded as final which reserved no questions, although a reference was directed upon which questions might arise to be again brought before the court. But under the Code of Procedure such a decree is not 'a final determination of the rights of the parties,' for the purpose of an appeal to the Court of Appeals. Such a decree, however, becomes final within the meaning of the Code, after the reference has been had and the report of the referee has been confirmed by the court. An appeal will then lie from the decree. * * *

"As no question was reserved, and nothing remained to be done beyond computing the amount due on the mortgage, the decree was final within the meaning of that term under the former practice, although questions might possibly arise on the reference which would bring the cause again before the court. But we think the decree was not final, for the purposes of an appeal, under the present

practice. It is the policy of the Code to allow only one appeal to this court in the same cause; which cannot be brought until after the suit is at an end in the court of original jurisdiction. There may be an appeal to this court from 'a judgment,' which is defined by the Code to be 'the final determination of the rights of the parties in the action.' And when the appeal has been perfected, the clerk is directed to transmit to this court a certified copy of 'the judgment roll,' which cannot exist until after the amount of the recovery has been ascertained. But although the decree, at the time it was affirmed by the Supreme Court in general term, was not final within the meaning of the Code, so as to authorize an appeal to this court, we think it became final when the referee's report of the amount due on the mortgage was afterwards confirmed, and that the appeal which was then taken from the decree was authorized by law. There is undoubtedly a want of strict accuracy in calling the same decree final at one time, and not so at another; but the construction which we have given to the statute is the only one which will secure the right of review, and at the same time give effect to the manifest intention of the Legislature to abolish the former practice, which allowed several appeals in different stages of the same cause, and restrict the parties to one appeal, to be brought after final judgment."

Mills v. Hoag, 7 Paige (N. Y.) 18, 31 Am. Dec. 271, decided in 1837, reads in part as follows:

"The appeal in this cause, if regular, was brought in time. The decree was final, and not interlocutory, as it finally disposed of the subject of litigation so far as the court was concerned. Chief Justice Savage defines a final decree to be the last decree which is necessary to be entered to give to the parties the full and entire benefit of the judgment of the court. The decree in this case comes within that definition, as no further questions or directions are reserved for the future judgment of the court. And although some further proceedings are to be had before a master to carry into effect the decree, all the consequental directions depending upon the result of those proceedings are given in the present decree. It is true there may be exceptions to the master's report; and in that case a further order of the court will be necessary to dispose of those exceptions. But a decree is not the less final in its nature because some future orders of the court may possibly become necessary to carry such final decree into effect. The usual decree in mortgage cases is a final decree as between the complainant and the defendants, and is constantly enrolled as such; although the master's report of the sale and distribution may be excepted to if it is erroneous, and it may require a subsequent order of the court to dispose of the questions which may thus arise."

The case of Gray v. Ames, 220 Ill. 251, is also reported in 5 A. & E. Ann. Cas. 174. In a note following the case the editor of A. & E. Ann. Cases has compiled and classified a very comprehensive list of authorities from which we obtained many citations herein used. This case is squarely in point. We quote from the statement of facts and the opinion:

"On Sept. 2, 1898, appellee filed her bill in the superior court of Cook county, against appellant, for the specific performance of a contract, by the terms of which the appellee agreed to convey to appellant a certain stock of goods in the city of Peoria in exchange for a house and lot in the city of Chicago. The specific terms of the contract and the facts as they appeared upon the hearing are, in our view of the case, immaterial in its consideration. After the bill was filed, and before the hearing, appellee sold the stock of goods at public auction, and the net proceeds of the same amounted to $293.30, which she claimed to hold for appellant. During a portion of the time pending the hearing she also was in possession of the real estate in question. Upon issue being joined the case was referred to a master to take the evidence and report the same, together with his conclusion of law and fact. His report was in favor of appellee and recommended a decree in accordance with the prayer of the bill. Exceptions filed to the report were overruled, and on June 20, 1902, a decree was entered which found that the appellee was entitled to a conveyance of the premises from appellant, by a good and sufficient warranty deed, upon appellee delivering to appellant a warehouse receipt for a piano and desk included in the contract, with these further provisions: 'Also the net proceeds of the sale of the personal property described in said contract, amounting to the sum of $293.30, less whatever amount may be found to be due the complainant upon an accounting. The court doth further find that said complainant is entitled to an accounting with the defendant for rents and profits of said real estate from and after Aug. 11, 1898, except during such time as the same was occupied by the complainant, less whatever amount the defendant is entitled to retain under said contract for taxes and interest paid by him upon the incumbrance, and the reasonable cost of such proper and necessary repairs as the defendant may have caused to be made to said premises since Aug. 11, 1898.' The decree then referred the cause back to the master to state the account. The appellant prayed an appeal from that decree, but subsequently abandoned it upon the ground that it was not final."

On this statement of facts, Wilkin, J., says:

"The points raised by this appeal turn upon the question as to whether or not the decree entered on June 20, 1902 was final. * * * The decree of June, 1902, provided that appellee was entitled to the relief as prayed in her bill, and directed that conveyance of the real estate in question should be made by appellant upon the delivery to him of the warehouse receipt for the piano and desk, and that further payment be made to him of the $293.30, the proceeds of the sale of personal property, less certain amounts to be thereafter ascertained, and the cause was referred to a master to ascertain these amounts. While it is true the basis upon which the account was to be stated was stated in that decree, yet it was impossible, from the very nature of the unascertained account, to fully and definitely decree an absolute specific performance of the alleged contract. The decree was not complete in itself, and required further judicial action on the part of the chancellor to give it effect to grant the relief sought. The reference to the master was not for the purpose of executing or carrying out the decree, but to ascertain facts upon which the final decree was to be based. If no other action had been taken after the rendition of that decree, it would have been of no avail to appellee. She could not have enforced it, because it was not complete in itself. In other words, it did not determine all of the equities in the case, but left some of them to be subsequently judicially determined upon the master's statement of the account. The original decree was therefore interlocutory, and not final, and the appellant was not required to appeal from it. Caswell v. Comstock, 6 Mich. 391; 13 Am. & Eng. Encyc. of Law (2nd Ed.) 31, and cases cited under note 2."

"In this case it appears that Lundburg brought in the superior court an action of account against Anderson, alleging that from May 1, 1886, to May 1, 1887, he and Anderson were partners. Anderson appeared and filed a plea denying the partnership; issue having been joined upon this, the cause was tried by a jury, who returned a verdict for the plaintiff, upon which the court ordered the defendant, Anderson, to account as a partner, and appointed Penoyer L. Sherman auditor, to hear and adjust the accounts between the parties and to make report to the court. From this order Anderson has appealed. In the action of account, which has almost entirely fallen into desuetude, the order to account is merely interlocutory, not final, and is therefore not an appealable order. Lee v. Abrams, 12 Ill. 110-116; Bacon's Abridgment, "Accompt."; Beitter et al. v. Zeigler, 1 Penrose & Watts, 135; Gessell's Appeal, 84 Penn. St. 238. The appeal will therefore be dismissed." Anderson v. Lundburg, 41 Ill. App. 248.

"A decree which leaves unsettled the equities relating to two items of account, as

to which a reference is ordered, is not final, although it ascertains and determines all the other equities of the case." Garner v. Prewitt, 32 Ala. 13.

"Where the plaintiff sued the representatives of the defendant, who had been his agent, for a settlement of accounts, and prayed that they might be 'ordered to deliver over all of said claims and convey said lands and to make such further account of the said business as justice may require,' etc., there was a decree establishing the right of the plaintiff to the lands, debts, claims, etc., embraced in the report (of auditors) and decreeing 'that the defendants should convey the lands and hand over the evidences of debt, etc. (mentioning them specifically), but reserving for the further consideration of the court, at its next term, so much of said report as finds $1.151.43 due to plaintiff'; the decree then ordered that the costs be paid equally by both parties: Held, that the decree was a final one, and could not, at a subsequent term, be reached by motion to set aside and vacate it. Where the decree decides the right to the property in contest, and directs it to be delivered up by the defendant to the plaintiff, or directs it to be sold, or directs the defendant to pay a certain sum of money to the plaintiff, and the plaintiff is entitled to have such decree immediately carried into execution, the decree must be regarded as a final one to that extent, and authorizes an appeal, although so much of the bill is retained as is necessary for the purpose of adjusting by further decree the accounts between the parties pursuant to the decree passed." Merle v. Andrews, 4 Tex. 200.

"The character of a judgment must be tested by its operation on the objects sought to be attained by the proceeding. If the cause be determined on its merits; if the rights controverted between the parties be settled —the judgment will be final, although ulterior proceedings to carry the judgment into effect may be required." Cannon v. Hemphill, 7 Tex. 184.

"Held: That according to the act of the General Assembly, regulating the practice of the circuit courts in cases in chancery, a party is not entitled to an appeal, unless upon a final decision, order or decree. And that, where the decree affirms that the conveyance of certain slaves is a mortgage, and that the complainant has a right to redeem under it, and directs the master in chancery to take an account, and make report to the next term of the court, these facts clearly show that the decree is merely interlocutory, and not final or conclusive between the parties; and the appeal will be dismissed for want of jurisdiction." Johnson's Ex'r v. Clark, 4 Ark. 235.

"A final decision, order, or decree, in a cause is the final sentence of the court, pronounced on hearing and understanding all the points in issue and determining the rights of all the parties in the suit according to equity and good conscience. Hinde's Practice, 429. Where references to the master are necessary to ascertain facts upon which the decree must be founded, as in cases of account or questions of title, the decree is always interlocutory. 2 Mad. Ch. 455. The case is dismissed for want of jurisdiction." Gaines v. Patton, 8 Ark. 67.

"A decree in favor of the plaintiff for the title and possession of land and improvements, and ordering a reference to a master to ascertain the necessity and value of repairs put upon them by the defendant, for which he claims compensation, is not a final decree from which an appeal can be taken." Fitzpatrick v. Phillips, 41 Ark. 85.

"A decree is not final which directs a reference to a master or other officer to do what the court, but for its power to make such reference, would itself have to do before it could decide the case." Caswell v. Comstock, 6 Mich. 391.

"A decree in chancery, which consists in part of a reference to a commissioner to take an account between the parties, is not a final decree, and an appeal cannot be taken therefrom to the Supreme Court. The practice of making such decrees final in form, in anticipation of the commissioner's report, is objectionable, and should be discontinued."

"A decree is not final, although it declares the principles on which the court means to act in all its future doings in the cause, unless it also adjudicates upon, and fixes, the rights of parties so that it can be carried into effect without further inquiry as to their rights and liabilities. When such a decree declared that there ought to be a specific performance, but does not fix its terms nor direct either party to do any act, and requires further inquiry as to title and incumbrances and an accounting, all of which are necessary to determine the terms and conditions of performance, it will be held to be interlocutory, and not to conclude the parties from further litigating their rights on a final hearing. The practice of inserting in orders preliminary directions and abstract rulings on future contingencies criticized as leading to confusion." Patterson v. Hopkins, 23 Mich. 541.

We will now consider some of the leading authorities which appear to support the contentions of the defendant.

"Where there are two or more separate and independent causes of action in a given case, there may be as many separate and distinct final judgments therein.

"In such a case, even in jurisdictions where terms of court are preserved, the lapse of the term will not deprive the court of jurisdiction of the cause, but simply of the judg-

ment which was rendered during such term, if it was a final judgment.

"In this jurisdiction, by reason of section 4185, Code 1915, there are no terms of court except for jury trials, and a judgment which disposes of all, or one or more, of the separate and independent causes of action in the case becomes a final judgment upon its rendition and entry, in the sense that the same passes from the further control of the court, and except a default judgment (section 4227, Code 1915) and an irregularly entered judgment (section 4230, Code 1915), and except for such purposes as all courts always retain control over their judgments. * * *

"A 'final decree' is one which disposes of the case or a distinct branch thereof. It is one which either terminates the action itself, or decides some matter litigated by the parties, or operates to divest some right, in such manner as to put it out of the power of the court making the same after the expiration of the term to place the parties in their original condition." Fullen v. Fullen (N. Mex.) 153 Pac. 294.

"A decree is final which disposes of every matter of contention between the parties except as to the amount of one item and refers the case to a master to ascertain that." Hill v. Chicago & E. R. R. Co., 140 U. S. 52, 35 L. Ed. 331.

"A decree dismissing a bill with costs is a final decree, although the costs be afterwards taxed and decree entered for the costs." Fowler v. Hamill, 139 U. S. 549, 35 L. Ed. 266.

"The question upon the motion to dismiss is whether this is a final decree, within the meaning of the acts of Congress. Undoubtedly, it is not final, in the strict technical sense of that term. But this court has not heretofore understood the words 'final decrees' in this strict and technical sense, but has given to them a more liberal, and, as we think, a more reasonable construction, and one more consonant to the intention of the Legislature. In the case of Whiting v. The Bank of the United States, 13 Peters, 15, it was held that a decree of foreclosure and sale of mortgaged premises was a final decree, and the defendant entitled to his appeal without waiting for the return and confirmation of the sale by a decretal order. And this decision is placed by the court upon the ground that the decree of foreclosure and sale was final upon the merits, and the ulterior proceedings but a mode of executing the original decree. The same rule of construction was acted on in the case of Michaud et al. v. Girod et al., 4 Howard, 503. The case before us is a stronger one for an appeal than the case last mentioned. For here the decree not only decides the title to the property in dispute, and annuls the deeds under which the defendants claim, but also directs the property in dispute to be de-

livered to the complainant, and awards execution. And according to the last paragraph in the decree, the bill is retained merely for the purpose of adjusting the accounts referred to the master. In all other respects, the whole of the matters brought into controversy by the bill are finally disposed of as to all of the defendants, and the bill as to them is no longer pending before the court, and the decree which it passed could not have been afterwards reconsidered or modified in relation to the matters decided, except upon a petition for a rehearing, within the time prescribed by the rules of this court regulating proceedings in equity in the circuit courts. If these appellants, therefore, must wait until the accounts are reported by the master and confirmed by the court, they will be subjected to irreparable injury. For the lands and slaves which they claim will be taken out of their possession and sold, and the proceeds distributed among the creditors of the bankrupt, before they can have an opportunity of being heard in this court in defense of their rights. We think, upon sound principles of construction, as well as upon the authority of the cases referred to, that such is not the meaning of the acts of Congress. And when the decree decides the right to the property in contest, and directs it to be delivered up by the defendant to the complainant, or directs it to be sold, or directs the defendant to pay a certain sum of money to the complainant, and the complainant is entitled to have such decree carried immediately into execution, the decree must be regarded as a final one to that extent, and authorizes an appeal to this court, although so much of the bill is retained in the circuit court as is necessary for the purpose of adjusting by a further decree the accounts between the parties pursuant to the decree passed. This rule, of course, does not extend to cases where money is directed to be paid into court, or property to be delivered to a receiver, or property held in trust to be delivered to a new trustee appointed by the court, or to cases of a like description. Orders of that kind are frequently and necessarily made in the progress of a cause. But they are interlocutory only, and intended to preserve the subject-matter in dispute from waste or dilapidation, and to keep it within the control of the court until the rights of the parties concerned can be adjudicated by a final decree. The case before us, however, comes within the rule above stated, and the motion to dismiss is therefore overruled. We, however, feel it our duty to say, that we cannot approve of the manner in which this case has been disposed of by the decree. In limiting the right of appeal to final decrees, it was obviously the object of the law to save the unnecessary expense and delay of repeated appeals in the same suit; and to have the whole case and every matter in controversy in it decided in a single appeal. In this respect the practice of the United States chancery courts differs from the English

practice. For appeals to the House of Lords may be taken from an interlocutory order of the Chancellor, which decides a right of property in dispute; and therefore there is no irreparable injury to the party by ordering h.s deed to be canceled, or the property he holds to be delivered up, because he may immed.ately appeal and the execution of the order is suspended until the decision of the appellate court. But the case is otherwise in the courts of the United States, where the right of appeal is by law limited to final decrees. And if, by an interlocutory order or decree, he is required to deliver up property which he claims, or to pay money which he denies to be due, and the order immediately carried into execution by the circuit court, his right of appeal is of very little value to him, and he may be ruined before he is permitted to avail himself of the right. It is exceedingly important, therefore, that the circuit courts of the United States, in framing their interlocutory orders, and in carrying them into execution, should keep in view the difference between the right of appeal as practiced in the English chancery jurisdiction and as restricted by the act of Congress, and abstain from changing unnecessarily the possession of property, or compelling the payment of money by an interlocutory order. Cases, no doubt, sometimes arise, where the purposes of justice require that the property in controversy should be placed in the hands of a receiver, or a trustee be changed, or money be paid into court. But orders of this description stand upon very different principles from the interlocutory orders of which we are speaking. In the case before us, for example, it would certainly have been proper, and entirely consistent with chancery practice, for the circuit court to have announced in an interlocutory order or decree the opinion it had formed as to the rights of the parties, and the decree it would finally pronounce upon the titles and conveyances in contest. But there could be no necessity for passing immediately a final decree annulling the conveyances, and ordering the property to be delivered to the assignee of the bankrupt. The decree upon these matters might and ought to have awaited the master's report; and when the accounts were before the court, then every matter in dispute might have been adjudicated in one final decree; and if either party thought himself aggrieved, the whole matter would be brought here and decided in one appeal, and the object and policy of the acts of Congress upon this subject carried into effect. These remarks are not made for the purpose of censuring the learned judge by whom this decree was pronounced; but in order to call the attention of the circuit courts to an inconvenient practice into which some of them have sometimes fallen, and which is regarded by this court as altogether inconsistent with the object and policy of the acts of Congress in relation to appeals, and at the same time needlessly burdensome and expensive to the

parties concerned, and calculated, by successive appeals, to produce great and unreasonable delays in suits in chancery. For it may well happen, that, when the accounts are taken and reported by the master, this case may again come here upon exceptions to his report, allowed or disallowed by the circuit court, and thus two appeals made necessary, when the matters in dispute could more conveniently and speedily, and with less expense, have been decided in one." Forgay v. Conrad, 6 How. (U. S.) 201, 12 L. Ed. 404.

The statute under consideration in the foregoing case is a part of section 2, session II, ch. 40, 1803 U. S. Statutes at Large, vol. 2, page 244, dealing with the right of appeal: "* * * And that from all final judgments or decrees rendered or to be rendered in any circuit court, or in any district court acting as a circuit court, in any cases of equity, of admiralty and maritime jurisdiction, and of prize or no prize, an appeal where the matter in dispute, exclusive of costs, shall exceed the sum or value of two thousand dollars, shall be allowed to the Supreme Court of the United States, and that upon such appeal, a transcript of the libel, bill, answer, depositions, and all other proceedings of what kind soever in the cause, shall be transmitted to the said Supreme Court. * * *"

Construing the above statute, and approving the opinion in Forgay v. Conrad, supra, the Supreme Court of the United States, in Dean v. Nelson, 7 Wall. 342, 19 L. Ed. 94, says:

"We are asked to dismiss the appeal in this cause, on the ground that the decree from which it was taken was not final. On looking into the record, we find that the controversy related to the ownership and transfer of 204 shares of the stock of the Memphis Gas Light Company, and to the rights of the parties under contract relating to the purchase, sale and transfer of the stock. The decree directs that Dean, the defendant below and appellant here, transfer forthwith upon the books of the company, 194 shares of the stock, to one of the plaintiffs below, who are appellees here, and ten shares to another. It directs, further, that account be taken and stated as to the amount paid and to be paid for the stock, and as to dividends accrued and to be credited under the contracts between the parties. This decree was rendered on the 12th of March, 1868, and appeal was allowed on the same day; the bond was given on the 23d. * * * So far as the court below was concerned, the decree in the case determined the principal matter in controversy between the parties. And since the decree could not be changed except through a new and distinct proceeding, it determined that matter finally. Why, then, must it not be regarded as a final decree within the meaning of the acts of Congress providing

for appeals? The eighth rule of practice to which we have referred certainly regards such a decree as that now under consideration as final in respect to the act to be performed. But it is insisted that this court has held that no decree which does not completely dispose of the whole cause is final, and that this decree, though disposing completely of the controversy as to the ownership of the stock, is not final, because it directs certain accounts to be taken. It is true that this court has always desired that appeals be taken only from decrees which are not only final but complete; and has, upon one occasion, at least, directed the attention of the circuit courts to the expediency and importance of refraining from making final decree on any part of a cause, however important, until prepared to dispose of it completely. Such a course would, undoubtedly, save much inconvenience, both to the circuit courts and this court, and diminish largely the expense of litigation to suitors. And it may be true, that under the influence of these considerations the degree of finality essential to the right of appeal has been sometimes pushed quite to the limit of construction. But we think that the current of decisions fully sustains the rule laid down by the late Chief Justice in the case of Forgay v. Conrad. and which we again declare in his own language: 'When the decree decides the right to the property in contest, and directs it to be delivered up by the defendant to the complainant, or directs it to be sold, or directs the defendant to pay a certain sum of money to the complainant, and the complainant is entitled to have such decree carried immediately into execution, the decree must be regarded as a final one to that extent, and authorizes an appeal to this court, although so much of the bill is retained in the circuit court as is necessary for the purpose of adjusting by further decree the accounts between the parties pursuant to the decree passed.' The reasoning in the case just cited fully vindicates this rule, in our judgment, as a sound construction of the acts of Congress relating to appeals, and is sustained by the authority of several decisions. Ray v. Law, 3 Cranch, 179; Whiting v. Bank U. S., 13 Pet. 6; Michaud v. Girod, 4 How. 505; Orchard v. Hughes, 1 Wall. 73. 17 L. Ed. 560; Mil. and Minn. R. Co. v. Soutter, 2 Wall. 440; 17 L. Ed. 860; Withenbury v. U. S, 5 Wall. 821, 18 L. Ed. 613. And it is quite clear that the appeal under consideration is within this rule. The decree for which it was taken decided the right to the property in contest, directed it to be delivered by defendant to complainant by transfer, entitled the complainant to have the decree carried immediately into execution, leaving only to be adjusted, accounts between the parties in pursuance of the decree settling the question of ownership. It follows that the motion to dismiss must be denied."

"* * * Counsel do not seem to have a clear notion as to whether the order of January 17th or that of January 31st is the one from which the appeal may be taken. The whole proceeding in the court below seems to have been conducted by piece-meal. We are of the opinion that the time within which an appeal may be taken began to run from the date of the final order in the proceeding, namely, from January 31st. It was only upon the entry of this order that the parties to the controversy could ascertain what their rights were as declared by the court. The proceedings had and orders made up to that time were intermediate, and, like the proceedings and orders upon the trial of an action, were merely the successive steps in the hearing which resulted in the final order or judgment determining the rights of the parties. Having reached this conclusion, it is necessary to decide whether this order is a final judgment within the meaning of the first subdivision of section 1722, or whether it is an order 'giving directions with respect to a receivership,' and falls in the list of orders enumerated in the second subdivision of that section. If it falls within the first category, an appeal will lie within one year, under the first subdivision of section 1723; otherwise the second subdivision of the latter section applies, and the time for appeal has long since elapsed. It will be noticed that the language of the first subdivision is 'from a final judgment in an action or special proceeding,' and not 'from the final judgment,' etc. * * * The order of January 31st was, in effect, a final judgment, making disposition of the branch of the case touching the receivership, and as such, we think, an appeal will lie therefrom at any time within one year from the date of its entry. 'A final judgment is not necessarily the last one in an action. A judgment that is conclusive of any question in a case is final on that question. The Code provides for an appeal from a final judgment, not from the final judgment in an action.' Sharon v. Sharon, 67 Cal. 185, 7 Pac. 456. 635. 8 Pac. 709. This case was an action for a divorce. Pending the action an order was made granting the plaintiff alimony and counsel fees. The defendant appealed. On motion to dismiss the appeal the court held the order appealable under the statute granting the right of appeal from a final judgment. The same conclusion was announced by this court, and the case of Sharon v. Sharon approved, in the case of In re Finkelstein, 13 Mont. 427, 34 Pac. 847, and in State ex rel. Nixon v. District Court, 14 Mont. 396, 40 Pac. 66. The order under consideration, being in form and effect a final judgment, is entirely analogous to an order awarding alimony and counsel fees in divorce cases. The following cases involving questions touching the character and appealability of similar orders are in point, and, we think, conclusive: Tuttle v. Claflin, 31 C. C. A. 419. 88 Fed. 122; Daniels v. Daniels, 9 Colo. 133, 10

Pac. 657; Chandler v. Cushing-Young Shingle Co. (Wash.) 42 Pac. 549; Hecht v. Hecht, 28 Ark. 92; Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157; Williams v. Morgan, 111 U. S. 684, 4 Sup. Ct. 638, 28 L. Ed. 559; Patterson v. Ward (Dak.) 71 N. W. 543; Hovey v. McDonald, 109 U. S. 150, 3 Sup. Ct. 136, 27 L. Ed. 888." State ex rel. Heinze v, District Court (Mont.) 72 Pac. 613.

"In an action in equity for the dissolution of a partnership and for an accounting the judgment of the court dissolved the partnership, and adjudged that plaintiff and defendant were each entitled to one-half the assets of the partnership after the debts were paid, and appointed a referee to take charge of and sell the property of the firm to pay the debts, and to divide the surplus between plaintiff and defendant. Held, that the judgment was final and appealable, and that the reference was merely for the purpose of executing the judgment." Arnold v. Sinclair, 11 Mont. 556, 29 Pac. 340.

"This was a bill in chancery, filed in the superior court of Cook county by the appellees against the appellants, to establish a constructive trust in favor of the children of Fredericka L. Stahl in certain premises located in the city of Chicago, the legal titte to which at the time the bill was filed, rested in John Stahl. Answers and replications were filed, and upon a hearing the bill was dismissed for want of equity, and the complainants prosecuted an appeal to this court, and the decree of the superior court was reversed and the cause remanded to that court, with directions to enter a decree in accordance with the views expressed in the opinion of this court. Stahl v. Stahl, 214 Ill. 131, 73 N. E. 319, 68 L. R. A. 617. Upon the case being reinstated in the superior court, that court entered a decree that the conveyances of the premises described in the bill of Fredericka L. Stahl to Frank A. Stahl, and from Frank A. Stahl to John Stahl, which were absolute in form, were constructively fraudulent; that said conveyances were in equity, in trust for the benefit of all the children of Fredericka L. Stahl, and that said John Stahl, since the 5th day of September, 1902, has been, and now is, the holder of the title to said premises as a trustee for the benefit of said children, each of whom, in equity, is the owner of a one-seventh part of said premises and entitled to one-seventh of the rents that have accrued thereon since August 18, 1900, the date of the deed from Fredericka L. Stahl to Frank A. Stahl, and the cause was re-referred to the master for an accounting, from which decree an appeal has been prosecuted to this court by the defendants. Motion has been made to dismiss the appeal, on the ground that the decree appealed from is not a final decree, which motion has been reserved to the hearing. It is clear that the decree from which this appeal is prosecuted finally determines that each of the children of Fredericka L. Stahl is the equitable owner of an undivided one-seventh of said real estate. Myers v. Manny, 63 Ill. 211; Allison v. Drake, 145 Ill. 500, 32 N. E. 537; Ames v. Ames, 148 Ill. 321, 36 N. E. 110. In Chicago & Northwestern R. Co. v. City of Chicago, 148 Ill. 141, 35 N. E. 881, on page 153 of 148 Ill., page 888 of 35 N. E., it was said: 'A judgment or decree is said to be final when it terminates the litigation between the parties on the merits of the case, so that, when affirmed by the reviewing court, the court below has nothing to do but to execute the judgment or decree it had already entered (Bostwick v. Brinkerhoff, 106 U. S. 3, 1 Sup. Ct. 15, 27 L. Ed. 73; Grant v. Phoenix Ins. Co., 106 U. S. 429, 1 Sup. Ct. 414, 27 L. Ed. 237; St. Louis, Iron Mountain & Southern Railroad Co. v. Southern Ex. Co., 108 U. S. 24, 2 Sup. Ct. 6, 27 L. Ed. 638), and when the complainant or plaintiff is entitled to have the decree or judgment carried immediately into execution.' We think it obvious the decree is a final decree so far as it establishes the trust and adjudges John Stahl to hold the title to said premises in trust for the benefit of all the children of Fredericka L. Stahl. In so far, however, as it orders that the case be referred to the master for an accounting the decree is interlocutory, and that portion of the decree is not now before us for review. Thomson v. Black, 208 Ill. 229, 70 N. E. 318. The motion to dismiss the appeal will be denied." Stahl v. Stahl, 220 Ill. 183, 77 N. E. 67.

"A decree is final, so as to authorize an appeal, when it fixes and settles the rights of the parties. A final decree is not necessarily the last order in a case, as orders sometimes follow merely for the purpose of carrying out or executing the matters which the decree has determined. A decree setting aside a former partition of land for error in the proceeding, and ordering a new partition fixing the interests of the several parties and appointing commissioners to divide the land, setting aside a sheriff's deed made under a sale on execution, and requiring the defendants to account for the rents and profits of the land, is a final decree, for the purpose of an appeal or writ of error, notwithstanding the account is not stated, as the proceedings under the order of reference to the master are in the nature of an execution of the decree." Allison v. Drake, 145 Ill. 500.

"A decree which grants the principal relief prayed for, and gives complainant the immediate benefit of judicial action by an injunction that in effect puts an end to defendant's business, is appealable, even though a farther decree may be necessary upon completion of an accounting." Smith v. Walker, 57 Mich. 456; Smith v. Walker (Mich.) 22 N. W. 267.

"On a rehearing of this case it is held that the court was in error in holding that the

decree of the court below was not such a final order as would authorize an appeal by the complainant to this court, and said decree is held to be final, and in conclusion of his rights and claims in the premises, nothing being left but an accounting, to be taken upon a basis fixed by the decree." Webber v. Randall, 89 Mich. 531, 50 N. W. Rep. 877.

"One who fails to appeal from a decree in partition proceedings determining the title of the parties to be that of cotenants cannot have the question of title reviewed upon appeal from a subsequent decree, entered upon report of the commissioners, fixing the rights of the parties to the rents and profits." Hunt v. Hunt, 109 Mich. 399, 67 N. W. Rep. 510.

"Held, that such a decree was final and appealable; that it was a determination of substantial rights; and, under the practice in this state, the party whose rights are thus determined is entitled to a review in this court of the proceedings by which it has been done. It is the effect, and not the form, of the order or decree, or the particular classification of the same, which determines the right to appeal." Perrin v. Lepper, 72 Mich. 454, 40 N. W. Rep. 859 (part 2 of par. 21 of syllabus) ; Damouth v. Klock, 28 Mich. 163; Brown v. Bronson, 35 Mich. 419; Shepherd v. Rice, 38 Mich. 557.

"The decree not only fixes the time at which the accounting is to commence, and the period which it is to cover, but it also fixes the respective rights of the parties with regard to the business of the partnership, and with regard to the business which is claimed by the defendant to have been no part of the partnership; and it directs the commissioner, after fixing the standing and rights of the parties in the various matters in dispute, to state an account upon this order as a basis. The decree is final as settling the basis of the accounting, and it is left to the commissioner to figure up the various matters in controversy on that basis, and report to the court. In order to be appealable, it is not necessary that the decree should dispose of all the merits. As was said in Barry v. Briggs, 22 Mich. 201, 204: 'The nature of any order as a decree or final order or as not final depends entirely on the effect produced by the adjudication upon the rights and interests of parties; and the usual distinction between interlocutory and other orders, depending on the stage of the cause in which they are made, is not the test for appellate purposes. An adjudication made at any stage of a cause may have such an effect as to render it appealable. The case of Lewis v. Campau, 14 Mich. 458, is an example of this. The order appealed from in that case was made at a very early stage of the controversy. And it is only after considering the operation of the order now before us that we can properly determine its appealable character.' In Lewis v. Campau, 14 Mich. 458, 460, it was said: 'It is not necessary that a decree should dispose of all the merits. Whenever the court finally adjudicates any part of them, although the practice of making separate decrees without necessity is very reprehensible, yet the partial decree is neither void nor interlocutory.' The decree in the present case goes much further in passing upon and deciding the merits of the case than did the decree in the case of Chandler v. Stange, 53 Mich. 479, 480. In that case the decree was entered, declaring the partnership dissolved, and referring it to a commissioner to take proofs as to the time the partnership continued and the matters and business covered thereby, and to report the same to the court. The commissioner made his report, to which defendant excepted. The circuit court sustained the exception, and decreed that the partnership continued in full force and operation until January 30, 1883. From this decree the complainant appealed. The defendant contended that the decree was not final, and therefore not appealable. It was said: 'It was certainly not final in the sense that it disposed of the controversy between the parties, but it was final as settling the basis for accounting, and the basis fixed upon entitled the parties to extend the accounting over a period which neither party, by his pleading, had claimed to be within the life of the partnership. If this was not admissible, an appeal was allowable, within the previous decisions of this court. Lewis v. Campau, 14 Mich. 458; People v. Jones, 33 Id. 303; Maxfield v. Freeman, 39 Id. 64; Taylor v. Sweet, 40 Id. 736; Morey v. Grant, 48 Id. 326.'" Hake v. Coach, 105 Mich. 425, 63 N. W. 306.

"When the decree of a chancellor ascertains and settles the rights of the parties in litigation, it is so far final as to sustain a writ of error, although the chancellor may refer the cause to a master to ascertain facts for an account. It will not vary the case that proceedings were afterwards had, and new parties made for a purpose not affecting the merits, but relating merely to the account to be taken. A final decree which will bar the prosecution of a writ of error, after three years, is the last decree made in the cause." Bank of Mobile v. Hall, 6 Ala. 141, 41 Am. Dec. 41.

"Where a cause is submitted upon an agreed state of facts for decree upon the equities of the same, such agreement providing for a reference afterwards to the register to state the accounts between the parties, a decree adjudging the complainant entitled to the relief prayed for and ordering a reference is final within the meaning of section 3449 of the Code, allowing amendments at any time before final decree." Hunt v. Stockton Lumber Co., 113 Ala. 387, 21 South. 454.

"A decree settling all the equities between the parties is final, and from it an appeal may be taken to the Supreme Court." Smith v. Coleman et al., 59 Ala. 260.

Alabama—Weatherford v. James, 2 Ala. 170; McKinley v. Irvine, 13 Ala. 681; Ainsley v. Robinson, 16 Ala. 793; Bradford v. Bradley, 37 Ala. 453; Jones v. Wilson, 54 Ala. 50; Broughton v. Winberly, 65 Ala. 549; Wyatt v. Garlington, 56 Ala. 576; Hastie v. Aiken, 67 Ala. 313; Cochran v. Miller, 74 Ala. 50; Exp. Elyton Land Co., 104 Ala. 88, 15 South. 939; Garry v. Jenkins, 109 Ala. 471, 20 South. 8; Compare Adams v. Sayre, 76 Ala. 509; Richardson v. Peagler 111 Ala. 478, 20 South. 434.

Arkansas—Davie v. Davie, 52 Ark. 224, 12 S. W. 558; Ex parte Crittenden, 10 Ark. 833.

California—Neall v. Hill, 16 Cal. 146.

Iowa—Murray v. Day, 70 Iowa, 671, 28 N. W. 476, approved in Carter v. Davidson, 73 Iowa, 45, 34 N. W. 603.

Maryland—Waverly Mut., etc, Land, etc., Ass'n v. Buck, 64 Md. 338.

Minnesota—Ayer v. Termatt, 8 Minn. 96.

Missouri—Guardian Sav. Bank v. Reilly. 8 Mo. App. 544. Compare Deickhart v. Rutgers, 45 Mo. 132.

Nebraska—France v. Bell, 52 Neb. 57, 71 N. W. 984; Younkin v. Younkin, 44 Neb. 729, 63 N. W. 31, holding that such a decree is final in the sense that there can be no further inquiry into the matters it determines.

Oregon—Schwartz v. Gerhardt, 44 Ore. 425, 75 Pac. 698; Marquam v. Ross (Ore. 1904) 78 Pac. 698.

The case of Herbert v. Wagg, 27 Okla. 674, is strenuously · urged by defendant in error as controlling authority to dismiss this appeal, and should therefore be considered:

"Matters independent of and distinct from those involved in an appeal are not thereby taken from the jurisdiction of the trial court, but remain under its control, notwithstanding the loss of jurisdiction over the particular question appealed. It is within the discretion of a trial court to allow separate trials to the several defendants in an action, or to refuse the same; and its ruling upon the subject will never be reversed unless it can be clearly seen that the trial court abused its discretion. H. brought an action, the object of which was to secure the cancellation of a deed executed to W. The land embraced therein, subsequent to the execution and delivery of the deed, had been by W. platted into blocks and lots and sold to a large number of purchasers, who claimed the same as innocent holders for value and without notice. These lot-holders H. joined as defendants in the action with W. On a separate trial awarded by the court to H. and W., decree was entered finding the deed involved void as to H., whereupon W. gave a

supersedeas bond and appealed. After said appeal was perfected, involving the question of the validity of the deed between H. and W., the court submitted the remaining issues of the cause, including an accounting and the question of whether the lot-holders were innocent purchasers for value and without notice, to referees to take the evidence and report the same with their findings of fact and conclusions of law. Held, that the appeal taken by W. did not remove the trial court's jurisdiction thereof, and that the reference for the purpose mentioned was not error."

In the above case the court did not have the same question under consideration. The case of Wagg v. Herbert, 19 Okla. 525, 92 Pac. 250, was appealed to the Supreme Court of the territory of Oklahoma. The question of their right to appeal before the final judgment was not raised. When it came up again as Herbert v. Wagg, supra, the question decided in that appeal was that matters independent of and distinct from those involved in the appeal are not thereby taken from the jurisdiction of the trial court and it had the right to hear and determine the rights of the other parties to the action, notwithstanding the appeal was taken from a judgment rendered against one of the litigants. This was based on the discretion of the trial court to grant or refuse separate trials to the several defendants in an action.

The case of Dean v. Nelson (U. S.) 19 L. Ed. 94, supra, recognizes that appeals should be taken only from decrees which are not only final, but complete, and has directed the attention of circuit courts to the expediency and importance of refraining from making final decrees on any part of a cause until prepared to dispose of it completely; then, relying upon the case of Forgay v. Conrad (U. S.) 12 L. Ed. 404, supra, says the decree before it is a final decree for the purpose of appeal; but a careful analysis of the case of Forgay v. Conrad discloses that it was the apparent necessity of the appeal to protect the rights of the appellants that prompted the court to go to the extreme limit in order to hold that the decree was final and entitled the appellant to maintain his appeal.

The case of Stahl v. Stahl, 220 Ill. 188, supra, relied upon by defendant in error, is a decision based on chancery practice.

In the case of the State ex rel. Heinze v. District Court, 28 Mont. 227, supra, the court makes this distinction: The Code provides for appeals from a final judgment and not from the final judgment. The Oklahoma Code provides: The Supreme Court may reverse, vacate or modify judgment of——; judgment is the final determination of—— It necessarily follows that if there is any virtue in the word "a" that is not possessed

by the word "the," defendant in error is not entitled to its benefit under our Code.

As used in the Montana Code, "a" would be construed as an indefinite article.

Webster's International Dictionary defines:

"'The' as "A demonstrative word used especially before a noun to particularize its meaning, having a force thus distinguished from the indefinite distr.butive force of A, An, and from the abstract force of the unqualified noun. Thus, the man, points to a particular man, as distinguished from a man and from the generic man. Its various special uses are: 1. Before a noun which it indicates as denoting what is well known; as, the Nile; the good Samaritan." (Continuing we may add the judgment; the final judgment.)

Lord Kame in his "Elements of Criticism" refrains from using the word the as a part of the title to his work on Criticism. He makes especial reference to the comprehensiveness of the word "the", saying, if this work should be entitled "The Elements of Criticism", it would be presumed to contain all of the elements of criticism. But it must be specifically understood there may be other elements of criticism not contained in this book.

Our Code specifies "judgments", and not a judgment. Judgment is the final determination. By analogy it would read: "The Supreme Court may reverse, vacate, or modify the judgment which finally determines the rights of the parties in an action." As was said by the Supreme Court of New York, the Code contemplates but one judgment and one appeal in an action.

Applying the reasoning of this Montana case, if the Montana Code had provided for appeals from the final judgment, the appeal in that case could not have been maintained.

In reviewing the decisions hold.ng a judgment final which only determines the equities, we must keep in mind most of these are chancery cases based upon common-law practice. This opinion is based strictly upon our Code of Civil Procedure.

Under the Code practice, there is but one form of action, which is called a civil action. Revised Laws of 1910, sec. 4650:

"The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished; and in their place there shall be, hereafter, but one form of action, which shall be called a civil action."

Under the Code practice, several causes of action may be joined in one action. Revised Laws of Oklahoma, 1910, sec. 4738:

"The plaintiff may unite several causes of action in the same petition, whether they be such as have heretofore been denominated legal or equitable, or both, where they all arise out of any one of the following classes: * * *"

Under the practice at common law, to adjudicate the rights of the parties in this action, it would have been necessary to file their suit on the equity side of the docket to determine the main or principal issue in the case, to wit, the right of the plaintiff to an undivided one-third interest in the oil and gas leases. Then if the court decreed the plaintiff an interest in the oil and gas leases, it would also decree an accounting. This would be a final judgment or decree. He would then bring his action on the law side of the docket to recover any amount that might be found due him. The decree, if not appealed from, would be res judicata of the rights of the parties under the issues joined in the equity cases.

In Oklahoma the right of appeal is a constitutional right (article 7, sec. 2, of the Constitution):

"The appellate jurisdiction of the Supreme Court shall be co-extensive with the state, and shall extend to all civil cases at law and in equity. * * *"

If it remains uncertain in this forum when a judgment is final, then it is uncertain whether to appeal therefrom, and on failure so to do the person loses his constitutional right of appeal. Successive appeals are needlessly burdensome and expensive to the parties concerned and produce great and unreasonable delays. It may often happen, when the accounts are taken and reported, there will be another appeal from the judgment of the court on the report of the referee.

The Legislature in adopting the Code defined a judgment (section 5123, Rev. Laws 1910, supra):

"A judgment is the final determination of the rights of the parties in an action."

The Code of Civil Procedure in this state originated in New York; Ohio adopted it from New York; Kansas adopted it from Ohio, and Oklahoma adopted it from Kansas; therefore, the decisions of these states are very persuasive.

The Legislature had a right to define the word "judgment", and if a judgment is the final determination of the rights of the parties in an action, then any order made by the court that does not finally determine the rights of the parties in the action cannot arise to the dignity of a judgment. Under this strict definition there can be only one judgment rendered in an action, and that would be the judgment that finally determined the rights of the parties. Used in the strict sense, there cannot be an interlocutory

judgment. There may be interlocutory orders or decrees, but, regardless of what it may be called, unless it finally determines the rights of the parties, it cannot be a judgment. In some jurisdictions there may be interlocutory judgments, but not under the practice as defined by the Code of Civil Procedure of Oklahoma.

The findings of the court do not constitute the judgment, neither are such findings any part of the judgment, nor do the conclusions of law or opinions of the judge form any part of the judgment proper. These may be reasons for the judgment, but the judgment may be good notwithstanding the reasons for the judgment are not good; hence we must not mistake the findings or opinions of the court for the judgment. The scope of the pleadings, the issues presented, the effect of the decision on the whole case, may be considered in determining this question. If the court decides all the issues raised by the pleadings, leaving nothing to be done but to execute it, then it would be a judgment.

The fact that it recites "that the court pronounced and rendered its interlocutory judgment and decree as follows", is not at all conclusive that it is interlocutory; but the test is, Does it determine the merits of the action and fix all the rights of the parties? Neither does the recital in the judgment "that further order and final decree of the court await the result of said account", definitely fix the status of the judgment; however, the view the court rendering the particular judgment takes of it and the court's intentions may be considered in determining whether it is a judgment or interlocutory order.

The judgment in the case at bar was based upon a petition which alleged that defendant in error (plaintiff below) was a partner and owner of an undivided one-third interest in and to certain oil and gas leases, the title to which was vested in plaintiff in error (defendant below); that plaintiff in error held the title in trust for defendant in error as to a one-third interest; that defendant in error was entitled to a conveyance of his one-third interest; and alleged that the profits exceeded the expenditures in a large sum, and asked for an accounting.

The decision of the court of May 26, 1914, states:

"The court pronounced and rendered its interlocutory judgment and decreed as follows:"

The court then decides that Shriver is entitled to an undivided one-third interest in two of the leases, that he does not own any interest in the remaining leases; that an accounting is necessary to determine the rights of the parties.

It is evident that the court rendering this decision did not expect it to be a final judgment. It is evident that it was not so considered by defendant in error, Shriver, at the time of its rendition. It is likewise clear that it did not decide all the issues in the case. It does not come within the rule heretofore laid down, in that it only decides one issue in the case. It does not finally determine the rights of the parties. The rights of the parties cannot be finally determined until the accounting has been taken and the amount due definitely ascertained.

An inspection of the judgment rendered July 20, 1918, shows that plaintiff in error, Wells, is ordered to convey the one-third interest to defendant in error, Shriver. He is entitled to have this order carried immediately into effect. Such was not the case with the order made May 26, 1914. The judgment of July 20, 1918, is what determined the ultimate rights of the parties, and that it is the judgment, or the final judgment.

We have not exhausted the authorities on the question of final judgment, but the authorities cited are sufficient to show a great diversity of opinion as to when a judgment is final. Regardless of the apparent conflict of authorities, we feel that we are bound by the decisions from Kansas, Ohio, and New York. We hold that a judgment is just what the statute defines it to be—"the final determination of the rights of the parties in an action." If the court decided all of the issues raised by the pleadings, it would be the judgment from which an appeal would lie. In cases of doubt, the intent of the court as shown by the orders made should not be disregarded in considering this question. The order made on the 26th day of May, 1914, was not a judgment; therefore it was not necessary to file a motion for a new trial, or appeal therefrom.

It is urged, and may sometimes occur, that the greatest amount of expense of the litigants would be incurred by the accounting, but under this decision the party aggrieved could not appeal until after the report of the referee had been passed on by the trial court; if the case was reversed, all expenses of the accounting would have been needlessly incurred, thereby working a great hardship upon the litigants. However, this is a matter that would more properly be called to the attention of the Legislature.

In the case at bar and similar cases, it would be entirely consistent for the court to pass upon the pleadings and evidence, make

its findings of fact and conclusions of law, but refrain from rendering any judgment (by so doing the parties would be fully apprised of the judgment that would probably be rendered defining their respective interests); then order the reference and appoint a referee. On the coming in of the referee's report, the court would pass on it and render judgment which would be the final determination of the rights of the parties in the action. This would be a judgment as contemplated by the Code, and but one appeal would be necessary. As was said by Mr. Chief Justice Taney in Forgay v. Conrad, supra:

"These remarks are not made for the purpose of censuring the learned judge by whom this decree was pronounced, but in order to call the attention of the trial courts to the inconvenient practice into which some of them have sometimes fallen and which jeopardizes the constitutional rights of the parties to the action and which is regarded by this court as altogether inconsistent with the object and policy of our Code in relation to appeals."

Defendant in error then makes this contention:

"Even should the court hold that the judgment rendered in 1914 was not a final order, still the same was an appealable order, and since the defendant did not appeal therefrom within six months, it is not now subject to review by this court. We say said order was appealable even though the court should be of the opinion that is was not a final order, because section 5236 of the Revised Laws 1910 (the statute that defines what orders are appealable), in the third subdivision thereof, in specifying appealable orders provides as follows: 'Third. An order that involves the merits of an action, or some part thereof.' Certainly the decree entered by the court in 1914 decided some part of the merits of the action and as such it was appealable even though it did not come within the first subdivision of said section 5236, which provides for appeal from a 'final order.' The fact that the first subdivision of said section provides for appeal from a final order and that the third subdivision provides for an appeal from an order that involves the merits of an action or some part thereof, clearly shows that an order such as that rendered in 1914 is appealable even though it might not be construed as a final order, because no one can contend that the same did not involve some part of the merits of this action."

We cannot agree with the contention made by the defendant in error. We have already set out in full section 5236 of the Revised Laws of 1910. The limitation of time for appeals was amended by Session Laws of 1910-11, page 35, ch. 18, and, so far as ap-

plicable to the question now under discussion, reads as follows:

"All proceedings for reversing, vacating or modifying judgments, or final orders shall be commenced within six months from the rendition of the judgment or final order complained of."

This section deals strictly with proceedings to reverse, vacate, or modify judgments or final orders. It does not say anything about any of the things mentioned in the subdivisions marked "second" and "third" of section 5236, supra. The first part of said section 5236 says: "The Supreme Court may reverse, vacate or modify judgments, * * * and in the reversal of such judgment or order may reverse, vacate or modify any intermediate order involving the merits of the action or any portion thereof."

Section 5237, Revised Laws of 1910, defines a final order as follows:

"An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding, or upon a summary application in an action after judgment, is a final order, which may be vacated, modified, or reversed, as provided in this article."

Section 5316, Revised Laws of 1910, defines an order as follows:

"Every direction of a court or judge made or entered in writing, not included in a judgment, is an order."

This does not place the six months limitation of time on the authority of the Supreme Court to reverse, vacate, or modify intermediate orders involving the merits of the action or any portion thereof when brought before this court by petition in error to review the final judgment in the action. If the order involving the merits of the action was a final order, then the limitation of time above referred to would govern. One of the rules in determining whether or not the order complained of was a final order is, Does it eliminate that part of the merits of the action from the case and exclude all further reference to it?

The interest of defendant in error, Shriver, in certain leases forms the foundation for the accounting to be taken by the referee. This part of the order which retains in the case the subject-matter of the action for further consideration, orders, and adjudication, is not final. Counsel for defendant in error then say in their brief:

"This court has never had occasion, so far as we have been able to find, to pass upon the exact question which confronts us with refer-

ence to the right of the defendant to appeal at this time from the decree of the court rendered in 1914, under facts identical with those involved in this case; but the principle governing the same was acknowledged by this court in the case of Herbert v. Wagg et al., 27 Okla. 674, 117 Pac. 209."

We have already reviewed the case of Herbert v. Wagg, supra, and it does not raise the question presented here.

We are unable to find that this court has ever passed on this exact question, but the courts of other states have:

"An order of reference is not a final order within section 524, Civil Code, nor does it determine the action or prevent a judgment, nor is it an order made in a special proceeding; and though it may affect a substantial right, it is not an order involving the merits of the action within the meaning of para. 4 of the Code, as amended by L. 1865, p. 130, and cannot, therefore, be reviewed by the Supreme Court, especially not until after final judgment.

"An order of reference is intended for the finding of the issues of the case, and a submission of such findings to the court, subject, however, to exception and review; and the report stands as the verdict of a jury, in case the reference is of the issues of fact alone, or as the decision of the court, where the reference is of all the issues, and on the report final judgment may be entered if no good ground of objection appears. The conduct of the trial is not changed by a reference." Savage v. Challiss et al., 4 Kan. 319.

The question of what orders are reviewable by the Supreme Court was passed on in McCulloch v. Dodge, 8 Kan. 476, in an especially well-reasoned opinion by Valentine, J.:

"Is it 'a final order'? We suppose not; for if it is a valid order, the suit is still pending in the district court just as it was before any judgment was rendered in the case. We suppose it will not be claimed that it is 'an order affecting a substantial right in an action,' and which, 'in effect, determines the action and prevents a judgment.' Nor will it be claimed that it is 'an order affecting a substantial right, made in a special proceeding,' for the order was made in the main action itself, and not in a special proceeding; nor do we think it can be claimed that it is 'an order affecting a substantial right made upon a summary application in an action after judgment,' for such an order undoubtedly has some connection with the enforcement of the judgment, and not with vacating it or setting it aside. An order made upon a summary application after judgment is not an order that attacks the judgment, as an order granting a new trial after judgment, or an order setting aside or vacating a judgment for some irregularity; neither is it an order made

after the judgment has been set aside, vacated, or reversed; it is simply an order made after judgment concerning some proceeding connected with the judgment, and for its enforcement, while the judgment is still valid and subsisting, and without questioning the validity or regularity of the judgment; it is simply an order taxing or retaxing costs; an order confirming or setting aside a sheriff's sale; an order amercing the sheriff or the clerk for refusing to pay over money collected or received on the judgment; an order in aid of execution, or some other such summary order in the case. It will not be claimed that the order of the district court setting aside such judgment and default, and permitting the defendants to answer, is 'an order that grants or refuses a continuance, discharges, vacates, or modifies a provisional remedy, or grants, refuses, vacates, or modifies an injunction,' or 'that refuses a new trial'; and we hardly suppose it will be claimed that it is an order 'that grants a new trial,' as no former trial had ever been had, nor even any issue of either law or fact had ever been made upon which any trial could have been had. 'A new trial is a re-examination in the same court of an issue of fact, after a verdict by the jury, report of a referee, or decision by the court.' Code, para. 306. 'An issue of fact arises—First, upon a material allegation in the petition, controverted by the answer; or, second, upon new matter in the answer controverted by the reply; or, third, upon new matter in the reply which shall be considered as controverted by the defendant without further pleading.' Code, par. 263. Not even an issue of law had ever been raised in this case, as the said defendants were wholly in default, not only having failed to answer, but also having failed to demur. Code, par. 262. Neither will it be claimed that the said order of the court below is one 'that confirms or refuses to confirm the report of a referee, or that sustains or overrules a demurrer.' Neither will it be claimed that said order is 'an order that involves the merits of the action, or some part thereof.' It simply opens up the judgment and the default, and allows the said defendants to answer, so that the merits of the action may be heard and considered, and the case disposed of on its merits. Courts will always, as far as they can, favor rulings that will allow cases to be disposed of on their merits, and will always, as far as they can, discountenance every attempt to prevent cases from being heard on their merits. We do not think that the said order of the district court is at the present time reviewable in this court, and therefore the petition in error must be dismissed." Short v. Nooner, 16 Kan. 220; Hottenstein v. Conrad, 5 Kan. 249; Brown v. Kimble, 5 Kan. 80; Edenfield v. Barnhart, 5 Kan. 225; Dolbee v. Hoover, 8 Kan. 124; A., T. & S. F. R. Co. v. Brown, 26 Kan. 443; Anderson v. Commercial Bank, 27 Kan. 161; The Kansas R. M. Co. v. A., T. & S. F. Ry. Co., 31 Kan. 90; Miller v. Noyes, 34 Kan. 13;

Anderson v. Higgins, 35 Kan. 201; Burch v. Adams, 40 Kan. 639.

"Plaintiff filed his petition under sections 557, 558, and 559 of the Code, to recover possession of certain real estate. The defendant sets up the general defense authorized by section 559, and also a counterclaim, that he has a contract for the purch se of the land, and asks a decree for specific performance. The plaintiff answers the counterclaim, and denies the contract. The case went to the jury, and under the direction of the court they found a special verdict—that the defendant was in possession of the re l estate at the time the action was brought under the said contract; and, as to the counterclaim, they found there had been mutual dealings between plaintiff and defendant for a long time, which they on the evidence could not adjust so as to find which side was indebted, etc. Motion for a new trial was made by the plaintiff, and overruled. And the court adjudged the defendant was entitled to the possession under the contract, and decreed specific performance of said contract: and, inasmuch as it was uncertain how much of the purchase money was paid, referred it to a master to report, etc. At this stage of the proceedings the plaintiff filed a petition in error. Held: (1) That this is not a final order, to which a petition in error will lie. The action is still pending, awaiting a judgment. (2) That the entry was not a final determination of the rights of the parties, and consequently the petition in error was premature, and must be dismissed." Longworth v. Mullaly. Cincinnati Superior Court Rep., vol. 2, p. 132.

"An order, decree or judgment of the court, which contains a provision for a reference of certain matters and that all further questions and directions be reserved until the coming in of the report of the referee, is not an appealable order, decree or judgment, under the Code. (Para. 11.) It is not the final order or judgment contemplated by the Code." Harris v. Clark, 4 How. Prac. (N. Y.) 78.

"Although a decree adjudicating the principal question in controversy was rendered more than two years previous to the granting of an appeal, yet, as said decree directed other inquiries to be made by a commissioner, the same was not a final decree, and a further decree upon the report of said commissioner being thereafter rendered, within two years from which the appeal was taken, such appeal was in time." Barker v. Jenkins, 84 Va. 895, 6. S. E. 459.

Other authorities which may give us some light on this question, either by principle, analogy, or incidentally, are as follows:

Oklahoma City Land & Dev Co. v. Patterson, 73 Oklahoma, 175 Pac. 934; Garretson v. Meeker, 76 Okla. 316, 185 Pac. 446; Blythe v. Hickley, 84 Fed. 228; Beebe v. Russell, 60 U. S. 283, 15 L. Ed. 668; Craighead v. Wilson, 18 How. 199, 15 L. Ed. 332; Farrelly v. Woodfolk, 19 How. (U. S.) 288, 15 L. Ed. 670; Perkins v. Fourniquet, 6 How. (U. S.) 206, 12 L. Ed. 406; Gerard v. Webb, 4 Port. (Ala.) 73; Hart s v. Clark, 4 How. Prac. (N. Y.) 78; Barker v. Jenkins, 84 Va. 895, 6 S. E. 459; Humiston v. Stainthrop, 69 U. S. 106, 17 L. Ed. 905; Burlington, C. R. & N. Ry. Co. v. Simmons, 123 U. S. 52, 31 L. Ed. 73; Davie v. Davie, 52 Ark. 224; Gray v. Palmer, 9 Cal. 616; McFarland v. Larkin (Ill.) 21 N. E. 656; Tompkins v. Hyatt, 19 N. Y. 534.

Having disposed of the jurisdictional questions, we will now consider the merits of this action. Plaintiff in error has assigned 16 specifications of error. Without any reference to these specific assignments of error, by either grouping or classifying them, plaintiff in error then sets out in his brief six different propositions and his authorities supporting them. Some of the specifications of error are not touched upon in plaintiff's brief; therefore, they are deemed to have been waived.

In reviewing the case we first refer to the evidence, as plaintiff in error complains it is not sufficient to support the judgment. The case was tried to the court without a jury, and on a full hearing of the evidence the court found the issues in favor of defendant in error, Shriver.

The undisputed evidence of defendant in error, Shriver, disclosed that George I. Bumbaugh and Shriver were operating together in the procuring of oil and gas leases. Bumbaugh was a practical oil man, and experienced in the oil field; Shriver was not, but was furnishing the money to pay Bumbaugh's expenses in this joint venture; this was very much like the miners' "grub stake." Acting under this joint venture, Bumbaugh made a deal whereby he was to get an assignment of two 40-acre leases executed by Sullivan and wife, which will be hereafter referred to as the Sullivan leases. Shriver was arranging to borrow money to handle these leases and develop them. The assignment was to be obtained in consideration of $2,000. There was one off-set well to be drilled immediately, and the territory had been proven practically on all sides of these tracts. The leases were in what was known as the shallow field near Chelsea. Wells could be drilled and equipped at that time with an expenditure of $600 to $800. This testimony of Shriver was corroborated by Bumbaugh.

Shriver further testified that Bumbaugh found plaintiff in error, N. D. Wells, and

brought him to the office of Shriver and Bumbaugh. That Wells wanted to get into the oil game on something that looked good, that was in the shallow field where the expense of developing would not be so great. That Wells had experience in the oil business and Shriver and Bumbaugh agreed to let Wells in on the leases in consideration of Wells putting up the money to pay for and develop the leases. It was agreed the assignment might be taken in the name of Wells, but each was to own an undivided one-third interest in the leases and all the proceeds therefrom, but the oil should be run and the money handled by Wells until they paid out. That in the accounting Wells was to receive interest for the money he advanced in behalf of Shriver and Bumbaugh. Shriver and Bumbaugh each offered to put up security to Wells, but Wells never demanded the security. Wells and Bumbaugh had been acquainted for 15 years. Bumbaugh assured Wells that Shriver was absolutely honest and all right. Bumbaugh likewise assured Shriver that Wells was honest and would be a desirable man to have associated with them in the development of the oil property. This arrangement was made in the evening; it was subject to Wells' inspection of the leases on the following day; if he decided the proposition looked good and took the leases, then Shriver and Bumbaugh were in one-third each. On an examination of the properties, Wells took the leases.

It was understood that no salaries were to be paid anyone of the three. Bumbaugh took charge of the developing of the property, the drilling of the wells, and gave it his entire time. He was without means and Shriver supplied Bumbaugh with money to pay his expenses for more than two months following the taking over of the leases by Wells, and until five wells had been drilled in. The evidence showed they were drilling about one well a week; all of them came in good wells, from 50 to 150 barrels production per day. Shriver was away on business, and Wells was at the leases part of the time, but not all of the time. Shriver, told Bumbaugh that he was willing to go there on the property to dress tools and help in the development of the leases, but Bumbaugh told him he could not do that, that the only thing he could do was to work as a roustabout, that they could get someone to do that, and for Shriver to rustle around and make money to take care of his expenses while he was developing the property. All of this testimony was fully corroborated by the testimony of Bumbaugh.

Wells admitted a few of the things testified to by Shriver and Bumbaugh, but attempted to place a different view on the transaction, claiming that he was purchasing the leases and loaning Bumbaugh and Shriver money to purchase from him a one-third interest, but the loan was not consummated because the security was not put up. Bumbaugh never did put up his security, but Wells conveyed Bumbaugh a one-third interest.

Shriver testified he offered to put up his security, but Wells refused to receive it, making the statement at that time to Shriver, in substance, as follows:

"Well, you have not any writing to the effect that I agreed to carry you for a one-third interest, and that is a loophole you overlooked and I am not going to give you any interest."

A witness, F. J. Hoey, testified to a conversation had with Mr. Wells after one or two of the oil wells had been brought in. At that time Mr. Wells told him Shriver and Bumbaugh each had a one-third interest and that he was carrying them.

The petition stated a cause of action, and the objection to the introduction of evidence was properly overruled. The evidence conclusively sustains the allegations in the petition, therefore it was not error to overrule the demurrer to the evidence. As we view the evidence, the preponderance and great weight is in favor of the defendant in error, and we do not see how the trial court on this testimony could have made his findings other than he did. Therefore we hold the judgment of the court is fully supported by the evidence.

We will now refer to the six propositions laid down in plaintiff in error's brief. The first and fifth propositions deal strictly with the statute of frauds; plaintiff in error contending that this contract is within the statute of frauds, is void, and not enforceable. We have fully considered the cases submitted on these questions, and do not think they are applicable to the case at bar. The statute of frauds was enacted for the purpose of preventing frauds, and not for the purpose of promoting or aiding a person in the perpetration of frauds. The very learned and able discussion on frauds and trusts by Higgins, J., in McCaleb v. McKinley, 80 Okla. 38, 194 Pac. 105, is squarely in point with the case at bar.

Section 6659, Revised Laws of 1910, is as follows:

"No trust in relation to real property is valid, unless created or declared: First. By a written instrument, subscribed by the gran-

tor or by his agent thereto authorized by writing. Second. By the instrument under which the trustee claims the estate affected; or, third, by operation of law."

Propositions 3 and 6 deal with a resulting trust. This is not a resulting trust, and the judgment is not based upon a resulting trust; therefore, the decisions cited by plaintiff in error on these propositions have no application. In this case there was a trust arising by operation of law.

Proposition 4, relating to partnerships, may be good as an abstract proposition of law, but it does not embrace all of the facts in this case. There was a partnership existing between Shriver and Bumbaugh in relation to the Sullivan leases prior to the negotiations with Wells. Wells knew of the existence of this partnership, and, by joining in the venture to take over the lease and develop it, he became a partner with Shriver the same as with Bumbaugh. When persons, who are considering a joint venture to do a certain thing, talk it over, discuss the interest each one is to have in the proposed venture and the share of the profits each is to receive, this may constitute a partnership notwithstanding they have made no specific reference as to the losses. Losses are not pleasant to contemplate; too much stress laid upon losses is discouraging. The parties going into a joint venture or partnership usually do it with their hopes high in anticipation of profits. The anticipation of profits is often the foundation on which air castles are built —a very pleasant pastime. In view of the psychological effect, parties contemplating joint venture for their mutual profit should not be censured because they refrain from stressing the losses with the same force and detail they do the profits. One of the partners, Bumbaugh, went up to the lease, took charge of the development and operation of it without any salary or compensation, except such as he was to receive by virtue of his interest in the profits derived from the oil to be produced and sold. Shriver was furnishing the money to pay Bumbaugh's expenses during this time. This brings the case clearly within the rule laid down in McCaleb v. McKinley, supra, and the other cases cited defining a trust arising by operation of law.

Proposition 2 refers to an implied trust or a trust ex maleficio. In this proposition plaintiff in error assumes that the agreement he has refused to perform is void under the statute of frauds, and that the trust does not arise from fiduciary relationship. 2 Bouvier's Law Dictionary, 1217, says:

"What constitutes a fiduciary relation is often a subject of controversy. It has been held to apply to all persons who occupy a position of peculiar confidence towards others, such as a trustee, executor, or administrator, director of a corporation or society; Carpenter v. Danforth, 52 Barb. (N. Y.) 581; Appeal of Watts, 78 Pa. 392."

Under the facts in this case a fiduciary relationship did exist by virtue of the partnership, and the title to the property being held by Wells in trust for his partners, Shriver and Bumbaugh. Wells' denial of Shriver's rights in the property was such a fraud upon Shriver as will operate to convert Wells into a trustee ex maleficio.

Where S. and B., as partners, found an oil and gas lease that could be purchased for a stipulated price and have bargained with the holder of such lease for its purchase, then agree to let W. in on the deal in consideration of W. putting up the money to pay for the lease and developing it, W. to carry S. and B. for a one-third interest each, and S. and B. permit the title to be taken in W.'s name, and then without compensation or salary B. devotes his entire time and experience to the development of the lease, S. furnishing him money to live on and paying his expenses while he is so operating the lease for the benefit of all three, and W., the holder of the legal title, attempts to deny the rights of either of the other parties, and repudiates the confidence reposed in him, this is such a fraud as will operate to convert W. into a trustee ex maleficio. The judgment of the trial court is affirmed.

HARRISON, C. J., and ELTING and KENNAMER, JJ., concur; JOHNSON and NICHOLSON, JJ., concur in conclusions.