WARREN et al. v. HOWELL.

No. 33900.   March 13, 1951.

Rehearing Denied July 3, 1951.

*232 P. 2d 934.*

C. F. Gordon and R. M. Mountcastle, Muskogee, for plaintiffs in error.

Phil K. Oldham, Alex I. Moses, and Kelly Brown, Muskogee, for defendant in error.

HALLEY, J. C. R. Howell instituted this action against Thomas E. Warren, John Rooney, Larry Rooney, and L. F. Rooney, as guardian and agent of John and Larry Rooney, and alleged that about September 1, 1942, he and the defendants entered into a partnership agreement under the firm name of Warren Equipment Company, whereby he and the three defendants were each to have a one-fourth interest in the partnership business of handling automotive equipment.

Plaintiff further alleged that substantial profits had accrued from the operation of the business, but that defendants had failed and refused to account to him for his share of the profits, and prayed for a dissolution of the partnership and an accounting and judgment for the amount found to be due him.

Defendants denied any partnership agreement with the plaintiff, and denied that he had ever been a partner in the Warren Equipment Company, and alleged that they had been the sole members of the firm since its beginning, and that plaintiff was an employee of the Warren Equipment Company and, as such, had received the full amount due him as an employee and bookkeeper of the firm. A copy of the articles of partnership forming the Warren Equipment Company was attached, naming the three defendants as partners and making no mention of the plaintiff. It was further alleged that copies of this agreement were placed in the records of the firm, which were in the possession and under the control of the plaintiff; that plaintiff, as an employee, had drawn a monthly salary for keeping the books, and had drawn checks to himself as an employee and deducted therefrom withholding and Social Security taxes deductible from salaries paid to employees; that during the years he had been an employee, the plaintiff had kept the records from which income tax returns were prepared for each year from 1942 to 1946, and had, as a notary public, taken the oath of a partner to such returns, all of which showed the names of the partners as the three defendants. The existence of a partnership between plaintiff and defendants was made an issue by the pleadings.

The court empaneled a jury and submitted to them the question of whether or not the plaintiff was a member of the partnership from its formation to the date this action was filed, and entitled to a one-fourth interest therein. The jury answered this interrogatory in the affirmative, and the court entered an order approving the finding of the jury, which was acting merely in an advisory capacity, as provided in equity actions.

On July 13, 1948, the defendants moved for judgment non obstante, and this motion was denied. Defendants filed a motion for new trial, which was overruled. Notice of appeal was given by the defendants. On July 2, 1948, defendants had filed an amendment to their answer, in which they alleged that if a partnership agreement was made, as alleged by the plaintiff, it was for the purpose of evading the income tax laws and hence illegal and unenforceable, and invoked the equitable doctrine of "clean hands". This argument was made when a hearing was had on the motion of the defendants for judgment.

On July 13, 1948, plaintiff moved that the court fix a date for an accounting, which was denied. Plaintiff moved to dismiss the appeal to this court, which was denied without prejudice to represent such motion when the case was submitted on its merits. Plaintiff has renewed his motion to dismiss upon the ground that the order appealed from is not a final order and hence not appealable. We have concluded that while the order of the trial court finding the existence of a partnership between plaintiff and defendants is not a "final order" in the generally accepted meaning of that term, it is an appealable order under subdivision 3 of

sec. 952, 12 O. S. 1941, which provides that this court has appellate jurisdiction, among other things, of "an order that involves the merits of an action, or some part thereof." The question of whether or not plaintiff was a member of the partnership and entitled to a share in the Warren Equipment Company certainly involved an important part of plaintiff's action, after that question was put in issue by the pleadings. A negative answer to that question would have settled the case adversely to the plaintiff. No further action would have been required, and plaintiff's only remedy would have been to appeal from such order.

Defendants first contend that the order appealed from is not supported by the evidence, but is clearly against the weight of the evidence. The evidence offered by the plaintiff to support his claim that he was a partner and entitled to share the profits arising from the operations of the Warren Equipment Company consists largely of his own testimony. He testified that in 1942 he talked with Mr. L. F. (Francis) Rooney, father-in-law of defendant Thomas E. Warren and father of John and Larry Rooney, the three defendants herein, in regard to recapturing certain automotive equipment leased by the L. F. Rooney interests for the construction of Camp Gruber. The term "recapture" appears to have been used to describe the exercise of the option to purchase contained in the lease agreement. That Mr. Rooney agreed to finance the venture under the firm name of Warren Equipment Co., and that the profits should be divided four ways between the plaintiff and the three defendants named; that Thomas E. Warren later advised him that Mr. Rooney did not want plaintiff's name to appear as a partner, but that he could draw $100 per month as an employee for keeping the books and performing other duties, and that any balance due plaintiff at the end of any fiscal year should be drawn as a bonus; that he agreed to this arrangement;

and that early in 1943 Mr. Gordon, attorney for Mr. Rooney, drew up a partnership agreement, with the assistance of Thomas E. Warren, naming Thomas E. Warren, John Rooney, and Larry Rooney as partners. When asked if naming the three partners was in accordance with his agreement with Mr. L. F. Rooney, the plaintiff answered:

"That's in accordance with my conversation with Mr. Warren relating to what Mr. Rooney wanted to do; yes, sir, that's right."

It should also be borne in mind that the plaintiff was drawing salaries for other positions he held in other Rooney companies, from which he had a substantial monthly income.

Mr. L. F. Rooney advanced to Warren Equipment Company the sum of $25,000 and took a demand note for that amount. Plaintiff became the bookkeeper for Warren Equipment Company, and sometimes signed as its "manager". He drew checks on its bank account and had full custody of its records, but claims that he did not see the written partnership agreement until 1943, despite the fact that it was shown that two copies of this agreement were deposited with the records under his control. It named only the three defendants as partners.

On February 18, 1943, plaintiff drew a check on Warren Equipment Company account payable to himself for $400, less Social Security and withholding taxes, and bearing the notation "Salary for Nov. Dec. Jan. and Feb." On April 3, 1943, he wrote and forwarded the following letter to the Treasury Department of the Federal government at Oklahoma City:

"The Warren Equipment Co. has formed a partnership composed of Thomas E. Warren, Larry Rooney and John Rooney, and we would appreciate your giving us an identification number for Social Security purposes. Also send us employer's tax return for the first quarter of 1943. (Signed) Warren Equipment Co., by Cecil E. Howell, Manager."

The plaintiff furnished the data for income tax returns of the partnership from 1942 to 1946. Each return showed the three defendants as partners; each return showed the salary drawn by the plaintiff as an employee, under the heading "Salaries and Wages", and as a notary public the plaintiff administered the oath of one of the named partners as to the correctness of the return. The plaintiff drew practically all checks drawn on the partnership account, including numerous checks to the three defendants in similar amounts in distributing accrued profits of the business; he deducted from salary checks to himself Social Security and withholding taxes. The end of the fiscal year of the partnership was September 30, and at no time until 1945 did plaintiff make any claim for a bonus at the end of any fiscal year, to make up his alleged one-fourth share of the profits he distributed to the three partners named in the partnership agreement. Plaintiff admitted that he made out Employer's Tax Returns which were sworn to by one of the partners named in the written agreement, and signed them as manager of Warren Equipment Company.

Mr. John S. Daniels testified that he dealt almost exclusively with plaintiff in transferring the automotive equipment formerly leased by Manhattan Construction Company, but his testimony has little bearing upon the question of whether or not the plaintiff was a partner in Warren Equipment Company. Mr. Gordon, attorney for Mr. L. F. Rooney, appears to have understood that at one time Mr. Rooney considered making plaintiff a partner, but when he drew the partnership agreement only the three defendants were named as partners. The plaintiff further testified relative to the manner of the Warren Equipment Company in keeping its records and transacting business as follows:

" . . . I'd like to admit that all official papers was signed by the three partners. That's according to our agreement. There was nothing officially done that showed more than three partners. Everything after that date was showed that way; that's the way we handled it."

Plaintiff claims that in 1945 he drew three checks for $5,000 each to the three defendants from accrued profits, and at that time mentioned to Thomas E. Warren that he had not received his share, and did not receive it, but made no further mention of the matter until 1947 when he mentioned it to L. F. Rooney, after the latter requested that they divide equally between them the profits from a real estate venture in which they had agreed to share equally. The plaintiff's oral testimony is that it was agreed that he was a fourth partner in Warren Equipment Company, but that his name be omitted from the partnership agreement and all official acts. He did not allege in his petition that the partnership agreement was reduced to writing. The defendants attached a copy of the written agreement to their answer. That written agreement made no mention of plaintiff as a partner, and in explanation thereof plaintiff testified that Thomas E. Warren had advised him that Mr. L. F. Rooney desired it that way to reduce taxes.

Defendants' testimony flatly denies that it was ever agreed that plaintiff be a partner. The actions of the plaintiff in failing to demand his share as a partner at the close of each fiscal year, when he himself distributed the profits to the named partners, and his representations in writing that the three defendants were the partners, and that he was their employee; his withdrawal of more than $4,000 as salary, together with the testimony of the defendants flatly denying that plaintiff was to be a partner, make it difficult to support plaintiff's contention that he was a partner. We have carefully reviewed all of the evidence and conclude that the findings and judgment of the court are clearly against the weight of the evidence. Having so con-

cluded, we do not find it necessary to consider the further contentions of the plaintiff.

The judgment of the trial court is reversed, with directions to enter judgment for the defendants.

WELCH, CORN, GIBSON, and DAVISON, JJ., concur. LUTTRELL, V.C.J., and JOHNSON and O'NEAL, JJ., dissent.

LUTTRELL, V.C.J. (dissenting). The holding of the court in the majority opinion in this case that the finding by the trial court that a partnership existed between plaintiff and defendants, which finding was necessary to justify the court in requiring an accounting between the parties, is a final order and appealable, is to my mind of such importance that I feel justified in expressing my views. The decision on this point embodied in the majority opinion has farreaching consequences, in that it will tend to produce uncertainty in the minds of lawyers as to what constitutes a final and appealable order or judgment as distinguished from one which is merely interlocutory, and will result in numerous appeals to this court from orders which have not heretofore been considered final orders.

By our previous decisions the distinction between a final order or final judgment, from which an appeal lies to this court, and an interlocutory order or a judgment lacking finality, which are not appealable, has been fairly well established and preserved. The leading case on this subject is Wells v. Shrivers, 81 Okla. 108, 197 P. 460. In that case the court, in an exhaustive opinion in which many authorities are cited and analyzed, held that a finding or order by the trial court that a partnership existed between plaintiff and defendants in certain oil and gas leases did not constitute a final order and was not appealable. In that case, as in the instant case, the plaintiff sought a dissolution of the partnership and an ac-counting, and the court, on April 3, 1914, found and adjudged that each of the parties owned a one-third interest in the leases and in the profits, and that an accounting should be had before a referee appointed by the court. Later the referee was appointed, and on July 20, 1918, the trial court confirmed the report of the referee, and rendered final judgment in the case. On appeal from that judgment it was contended that the judgment rendered in 1914 was a final judgment, from which an appeal had not been taken in time, and that the court was without authority to review on appeal from the judgment rendered in 1918 anything decided by the court in the judgment of 1914. In that case we said that only one judgment could be rendered in an action; that neither the findings of fact nor the conclusions of law constituted the judgment, and that to be a judgment the court must decide all issues raised by the pleadings, leaving nothing to be done but to execute the judgment. We further said that the fact that the journal entry of April 4, 1914, reciting that the judgment was interlocutory, was not at all conclusive that it was interlocutory, but that the test was whether it determined all the merits of the action and fixed all the rights of the parties.

That case has been followed and cited with approval in numerous later decisions of this court, the latest being in the case of Jinks v. Braly, 202 Okla. 581, 216 P. 2d 581. We there quoted the definition of a final order as contained in 12 O.S. 1941 §953, as follows:

"An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding or upon a summary application in an action after judgment, is a final order, which may be vacated, modified or reversed, as provided in this article."

The opinion also quotes from Wells v. Shrivers, supra, the following language:

" 'To constitute a "final order" in an action, it must be an order affecting a substantial right in the action, and the effect of such order is to determine the action and prevent a judgment.' "

In Jinks v. Braly, supra, we held that an order denying a jury trial, in a case where the parties were entitled to a trial by a jury, was not a final order, for the reason that while it denied a substantial right of the parties demanding a jury, it did not determine the action, because the action was still pending after the order was entered.

In Oklahoma City-Ada-Atoka Ry. Co. v. Parks, 182 Okla. 598, 78 P. 2d 791, we pointed out the distinction between an order sustaining a demurrer to the petition, which was an appealable order in that it prevented the entry of a further judgment in the case, and an order overruling a demurrer to the petition, which left the case pending to be tried on its merits.

In Attaway v. Watkins, 171 Okla. 102, 41 P. 2d 914, we held that an order striking certain defenses from the answer of defendant was not an appealable order, and overruled Wesley v. Diamond, 26 Okla. 170, 109 P. 524, which held that an order striking certain parts of the plaintiff's petition was an appealable order. In Attaway v. Watkins, supra, we quoted with approval from Oklahoma City Land & Development Co. v. Patterson, 73 Okla. 234, 175 P. 934, as follows:

" 'No one of the orders made by the district court of Oklahoma county determines any question that affects the substantial rights of any one of the defendants herein. Neither is any one of the orders a final judgment. A 'final judgment' has been determined to be one ending a particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to determine the rights of the parties. If such orders as were entered in this case were appealable to this court for review before final judgment, there would never be any end of litigation. It would furnish a method and means by which litigation could be carried on ad infinitum. Public policy requires that there should be an end to litigation at some time, and for that reason our statute has wisely provided a salutary rule which does not permit an appeal to this court from an interlocutory order or ruling made by the trial court during the trial of a cause unless specially authorized. All the rulings complained of in this matter could have been excepted to, and, when a final disposition was made of said cause, and a final order, judgment, and decree entered therein, determining the respective rights of the parties to this controversy, have been reviewed by incorporating the same in an appeal by petition in error to this court. McMaster v. Bank et al., 13 Okla. 326, 73 P. 946; McCulloch v. Dodge, 8 Kan. 476; Flint v. Noyes, 27 Kan. 351; Short v. Nooner, 16 Kan. 220.' "

In Fooshee & Brunson v. Smith, 34 Okla. 247, 124 P. 1070, cited with approval in Wells v. Shriver, we said that regardless of the form of a judgment, where the case had been decided on its merits and the rights of the parties to the controversy had been concluded, the judgment was final regardless of what was contained in the journal entry thereof.

Numerous other decisions by this court as to the finality of judgments and orders which rendered them appealable, all holding in accord with the authorities which we have cited above, could be cited and analyzed, but to do so would unduly extend the length of this dissent. It is noteworthy that the majority opinion cites no authority in support of its statement that the finding of the court that a partnership existed was an appealable order prior to the rendition of a final judgment in the case. Of course, a finding that no partnership existed would have been a final order, just as is an order sustaining a demurrer, for the reason that such order or finding would have prevented any further proceedings or judgment in the case, and would have finally determined the rights of the parties.

The only case I have found which might be considered to support the statement in the majority opinion is Hardesty v. Naharkey, 88 Okla. 253, 213 P. 89. In that case the court held that a judgment of the trial court canceling certain deeds, adjudging plaintiff to be the owner of an interest in said lands, and rendering a money judgment against the defendants in a specific and designated amount, and directing that execution issue on such judgment, was a final judgment and appealable, although the journal entry further provided for the appointment of a referee for the purpose of an accounting as to certain rentals from oil and gas leases. Under the circumstances of that case the decree was held to be appealable, and such an opinion was based largely, in my opinion, upon the ground that the decree not only decided title to the property in dispute, but awarded execution. In syllabus No. 2 of the opinion in that case the rule is stated:

"When the judgment entry determines issues involving the merits of the action or some part thereof and *specifying the relief granted the prevailing party,* but reserves for further action an accounting for certain alleged oil lease rentals, and there is nothing therein which postpones its operation until action on the accounting, then such judgment is appealable, under section 5236, Rev. Laws 1910."

As will be noted from the statement of facts in this case, as set forth in the majority opinion, the trial court entered no judgment, but entered only an order approving the verdict of the jury that a partnership existed as contended by plaintiff, but it certainly cannot be said that any order or judgment was entered by the court "specifying the relief granted the prevailing party."

Of necessity, under the facts in this case, the court retained the cause for further action, to wit, an accounting between the parties. In my opinion, Hardesty v. Naharkey, supra, is not authority for the rule that in an action of this nature the interlocutory order of the trial court finding that a partnership existed is an appealable order prior to the rendition of a final judgment in the case, and prior to the rendition of any judgment specifying any relief granted the prevailing party.

In the instant case the finding of the existence of a partnership was a prerequisite to an accounting, since if no partnership existed plaintiff would not be entitled to an accounting. Since the court found that a partnership existed the judgment was not final, and did not conclusively determine the rights of the parties until the accounting was had, and when that had been done, had defendants been dissatisfied with the result, an appeal to this court from the final judgment of the trial court would have presented to this court the identical question presented by this appeal.

If, in the instant case, the majority had held that the finding of the trial court that a partnership existed was correct, this court would be in the anomalous position of affirming the judgment of the lower court, and remanding the case to the lower court for the accounting, Then when the accounting was had, either party dissatisfied therewith would have the right to appeal again to this court from the judgment rendered on the accounting. Thus we would have two appeals in a case where one would serve the purpose, and the net result would be an increase in the work of this court, and the rendition of two final judgments in the court below in the same case. This result would be contrary to all our prior decisions, and would unsettle the rule which has heretofore been well established in this state.

For the reasons above stated, I respectfully dissent to the majority opinion.

I am authorized to state that O'NEAL, J., joins in these views.